```
 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF HAWAII

 3
     A.B., by her parents and      ) CV 18-00477 LEK-RT
 4   next friends, C.B. and D.B.,  )
     and T.T., by her parents and  ) Honolulu, Hawaii
 5   next friends, K.T. and S.T.,  ) April 5, 2019
                                   )
 6             Plaintiffs,         ) (22-1) Motion to Dismiss
                                   ) Plaintiffs A.B., by her
 7      vs.                        ) parents and next friends,
                                   ) C.B. and D.B., and T.T., by
 8   HAWAII STATE DEPARTMENT OF    ) her parents and next
     EDUCATION and OAHU            ) friends, K.T. and S.T.'s
 9   INTERSCHOLASTIC ASSOCIATION,  ) Complaint for Declaratory
                                   ) and Injunctive Relief
10             Defendants.         )
     _____)
11

12                      TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LESLIE E. KOBAYASHI
13                    UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For the Plaintiffs:        JONGWOOK PHILIP KIM
                                MATEO CABALLERO
16                              ACLU of Hawai'i
                                PO Box 3410
17                              Honolulu, Hawaii 96801

18
     For the Defendant          JOHN M. CREGOR, JR., Deputy
19   Hawaii State Department    Office of the Attorney General-Hawaii
     of Education:              Civil Rights Litigation
20                              425 Queen Street
                                Honolulu, Hawaii 96813
21

22   For the Defendant          LYLE S. HOSODA
     Oahu Interscholastic       LAUREN M. NAKAMURA
23   Association:               Hosoda & Bonner
                                Three Waterfront Plaza
24                              500 Ala Moana Boulevard, Suite 499
                                Honolulu, Hawaii 96813
25
```

```
 1   APPEARANCES CONTINUED:

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   Official Court Reporter:  Debra Read, CSR CRR RMR RDR
                              United States District Court
22                            300 Ala Moana Boulevard
                              Honolulu, Hawaii 96850
23                            readit3949@gmail.com

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

```
 1   FRIDAY, APRIL 5, 2019                              9:45 A.M.
 2              THE COURTROOM MANAGER:  Civil 18-00477 LEK-RT, A.B.,
 3   by her parents and next friend, C.B. and D.B., and T.T. by her
 4   parents and next friends, K.T. and S.T. versus the Hawaii
 5   Department of Education and the Oahu Interscholastic
 6   Association.
 7         This case has been called for hearing on Defendant Oahu
 8   Interscholastic Association's motion to dismiss plaintiffs'
 9   complaint.
10         Counsel, please make your appearances for the record.
11   Please speak into a microphone.
12              MR. KIM:  Wookie Kim with the ACLU of Hawaii on
13   behalf of plaintiffs.
14              MR. CABALLERO:  Mateo Caballero with the ACLU of
15   Hawaii.
16              THE COURT:  All right.  Good morning to you both.
17      Mr. Hosoda.
18              MR. HOSODA:  Good morning, Your Honor.
19        Lyle Hosoda and Lauren Nakamura appearing on behalf of
20   the defendant Oahu Interscholastic Association.
21              THE COURT:  All right.  Good morning to you both.
22              MR. CREGOR:  And good morning, Your Honor.
23        John Cregor, Deputy Attorney General, appearing for the
24   Department of Education, defendant
25              THE COURT:  All right.  Good morning, Mr. Cregor.
```

```
 1          So you folks know the case much better than I do.  I'm
 2     happy to hear whatever your arguments are.  I'll give you a
 3     preliminary inclination of the court and my preliminary
 4     inclination is to deny the motion.
 5          Under Iqbal v. Twombly -- I'm sorry -- Ashcroft v. Iqbal
 6     and Atlantic v. Twombly, the plaintiff allegation must suggest
 7     that the claim at least has a plausible chance of success.  In
 8     other words, their complaint must allege factual content that
 9     allows the court to draw the reasonable inference that the
10     defendant is liable for the conduct alleged.
11          I have taken a look at the Smith case and where the
12     Supreme Court found that it has to be more than a passing
13     belief that federal funds were used to pay the association
14     fees.  But here under the standard now that the court would
15     look at it on a motion to dismiss to assume that the facts as
16     alleged are true, the court therefore is compelled by
17     paragraph 13 to conclude that the DOE receives federal
18     financial assistance and is subject to the anti-discrimination
19     provisions of Title IX, and that in paragraph 16, "The OIA has
20     controlling authority over many aspects of the DOE's
21     interscholastic athletic programs, including athletic
22     facilities," et cetera, and most specifically the last sentence
23     which says, "The OIA indirectly receives federal financial
24     assistance," and therefore, "The OIA is subject to the
25     anti-discrimination provisions of Title X[sic]."
```

1      Further, I think at paragraph 5, the allegation is that
2  the OIA acts under the control of and in close coordination
3  with the DOE.  While that doesn't outright say they receive
4  funds from OIA -- I mean, from the DOE -- I think putting all
5  of those paragraphs together, there's at least an argument or a
6  suggestion of at least a plausible chance of success.  Of
7  course, discovery can be done to see if whether they receive,
8  in fact, any funding from the DOE.
9      All right.  So that's the preliminary inclination.  It is
10 an inclination; it's not my final decision.
11     So, Mr. Hosoda, I'll start with you, given my inclination
12 and that you filed the motion.
13          MR. HOSODA:  Thank you, Your Honor.  And I
14 appreciate the Court providing us with your inclination.
15     And with that, I don't have too much to add.
16          THE COURT:  Okay.
17          MR. HOSODA:  But in terms of context, I wanted to
18 just tell you how much of a privilege it is to stand before you
19 representing the OIA because this is my tenth year and it
20 really is a situation where since 1940, OIA has been in
21 existence, and now it is comprised of 30 schools that look and
22 oversee 19 sports.
23     Now back in the '40s and '50s and '60s, it was pretty
24 simple in terms of an equation because you had a limited amount
25 of schools and you had very limited issues 'cause you either

1  had the ILH and/or the OIA.  But now the OIA is confronted with
2  many issues, charter schools, many different types of schools.
3  How do we get the student?  Everybody, when I go to their
4  meetings when there are 30 principals, 30 athletic directors,
5  there's not an individual in there with less than 25 years of
6  experience and commitment, passionate commitment to the student
7  athletes.
8       So I want to assure Your Honor that these individuals that
9  make up the OIA are definitely committed to the exact same
10 thing that ACLU is alleging in this case which is we're
11 committed to the student athlete and fairness for all.
12      They are really passionate about that, and I say it's
13 privileged because I give of my time because of the student
14 athlete and all it did for all of us when we were growing up.
15      So these issues that come up with this commitment,
16 constantly new issues, right?  We've had eligibility
17 challenges.  We've -- you know, how do you have fairness to
18 everybody?  It's very hard.  And many times it boils down to
19 politics and money.  We can only do the best we can with the
20 resources that we have, and I want to tell you that our
21 individuals at our association are definitely committed.
22      As to this specific motion, we found the *Smith* case, and
23 because the NCAA is the collegiate athletic association, we
24 thought that it was worthy of bringing that issue before the
25 Court.  I can understand the Court's inclination -- and it is

1   troublesome for us because we have a situation where all of the
2   members, athletic directors, and principals, are all on DOE
3   salary.  All of the playing facilities that we have, all of the
4   facilities and accommodations that we have are largely almost
5   all DOE which receive -- it's undisputed that the DOE receives
6   funds.  But the other aspect to this is that the OIA does not
7   receive any federal funding directly and don't have that
8   contract.
9        So for those reasons, I can see where there's a
10  troublesome issue, and I -- you know, I appreciate the Court's
11  inclination and we'll go along with that.  But I just want to
12  say that I do think that it was not a motion that was not worth
13  bringing --
14           THE COURT:  No, no, I don't think it's a frivolous
15  motion.  I think the *Smith* case is pretty clear with regard to
16  that.  It's just under a motion to dismiss standard where I
17  assume all of the allegation is true and they just have to make
18  a plausible claim of success, I think it's sufficient here for
19  that.
20       Now, whether it can withstand a motion for summary
21  judgment, whether the evidence in the discovery will show that
22  OIA is an agent or subunit of DOE, I guess that's yet to be
23  seen.
24           MR. HOSODA:  Thank you, Your Honor.
25           THE COURT:  But I appreciate it.  Thank you.

1                 MR. HOSODA:  Thank you.
2                 THE COURT:  Okay.  Mr. Kim, will you be arguing?
3                 MR. KIM:  May it please the Court.
4         We totally -- we completely agree with your preliminary
5    inclination.  The question presented before the Court today is
6    whether -- based on the allegations in the complaint, whether
7    it is plausible that the OIA is subject to Title IX.  And as
8    the Court has already pointed to, there are numerous paragraphs
9    that specifically touch on the question of receiving federal
10   financial assistance.
11        And so at this stage, it's inappropriate, we believe, to
12   construe all of these allegations in the complaint in the
13   opposite -- you know, in the OIA's favor, and so the Court
14   should deny the motion.
15        And I think if there are any questions that you have about
16   any of the specific bases that we've set forth in our
17   opposition brief, I'm more than happy to address those.  But an
18   important point, I think it sounds like from counsel for OIA
19   that there's no dispute, and we're not alleging this either,
20   that the OIA does not directly receive federal funds.  And so
21   really it comes down -- sorry -- as in directly contracted OIA,
22   between OIA and the federal government.
23                THE COURT:  Right.
24                MR. KIM:  And the question just becomes what is the
25   OIA's relationship with the DOE in other respects.

1        And our first argument is really that, you know, the OIA
2    is completely subsumed within the DOE.  So in other words,
3    under the Civil Rights Restoration Act and *NCAA v. Smith*, which
4    both acknowledge that Title IX applies institution-wide, if the
5    DOE receives funding, then all of its programs, every -- every
6    single part of it also is subject to Title IX.
7        And so if the OIA is completely subsumed within the DOE,
8    then, obviously, naturally it must be subject to Title IX as
9    well.
10       The trickier question is more because we don't know at
11   this stage what the formal status of OIA is.  We looked through
12   the corporate database.  It is not incorporated in any form.
13   So -- and I think that is a significant allegation as well,
14   that the OIA is unincorporated.  As the *Russo* case out
15   of -- I'm blanking on the specific district -- but the *Russo*
16   case emphasized when looking at one school and knowing that it
17   did not have separate corporate status, sort of in the same way
18   that we impute conflicts of interest to firms, if that one
19   school is subject to Title IX, it imputes to the entire system,
20   and that should hold here as well.
21       And the final point I'll make really is about indirect
22   funding.  I think *NCAA v. Smith* makes very clear that indirect
23   funding is sufficient, and we've alleged that here.  And as
24   even counsel for OIA has conceded, there's tons -- there is
25   tons of funding going from DOE to the OIA and that's through

1    the salaries.  This is not a situation where there's just a

2    small sum of money that is funding the OIA, and we expect that

3    discovery will show all of this.

4         But again, that's not what we're deciding, or that's

5    not --

6              THE COURT:  Right, and that wasn't alleged in the

7    complaint.

8              MR. KIM:  Yes.

9              THE COURT:  But you have to do discovery with regard

10   to that.

11             MR. KIM:  Yes.

12             THE COURT:  And so that probably will be, you know,

13   teed up for another day on a motion for summary judgment.

14        Where are you folks on discovery, though?  Do you have a

15   discovery plan?  Are you going to phase the discovery so that

16   you can focus on this OIA issue first?

17        Have you guys met with the magistrate judge?  Do you need

18   assistance?

19             MR. KIM:  We've -- discovery has begun.  There has

20   not been any phasing.  To be honest, we didn't expect the OIA

21   to raise this much of a fight about this issue about whether

22   it's subject to Title IX because, you know, I think if you look

23   at the big picture, it becomes very clear that there's just no

24   reasonable -- there's no reasonable basis or argument to say

25   that the OIA is not subject to Title IX.

1        THE COURT: Well, I mean, if the *Smith* case -- I
2   mean, the Supreme Court has held, you know, if there's this
3   sort of passing kind of relationship with federal funding, that
4   that's not enough -- you know, enough to say the NCAA, you
5   know, their dues are being paid by the school and the school
6   receives federal funding, so -- of course, it's different with
7   universities, even state universities, because they have a lot
8   of private donors.  DOE does not.  It either comes from state
9   funding or federal funding.  I mean, there's some grants and
10  private -- but, you know, majority.  So I think that's
11  different than universities.
12       But I think *Smith* stands for the proposition of you need
13  to show a direct correlation between -- not necessarily direct
14  funding -- but a direct correlation between the funded entity,
15  that is, the educational system, here DOE, or it's a
16  university, and the athletic association.
17       So if -- as you and Mr. Hosoda have indicated, you know,
18  all these athletic directors and coaches and so forth comprise
19  OIA and state employees presumably being paid by state funds
20  and federal funds.
21       But if they're serving as volunteers, then I don't know
22  that I can -- I'm just talking out loud now, I'm not making any
23  rulings -- I don't know that I can impute their salaries
24  necessarily to OIA -- to the OIA if they're serving as
25  volunteers.  I don't know at this point.  And maybe none of us

1   know right now on what basis they serve in the OIA and how much
2   of their salaries are comprised of federal funding as opposed
3   to state and so forth.
4          MR. KIM:  Of course.
5          THE COURT:  So that's the kind of stuff that you
6   guys have to do in discovery.
7       What I was asking about phasing is is that, you know, this
8   could be ripe for summary judgment, and if that's something
9   that you guys want to do then, you know, I would suggest you
10  sits down and either work it out among yourselves and have the
11  discovery based on that, 'cause there's no -- there's not going
12  to be any denial I think that the DOE receives federal funding,
13  okay?  But this is certainly a threshold issue with regard to
14  OIA, you know, what is it, what is it comprised of, how is it
15  funded, if at all.  I don't know.  I don't know if it's a bunch
16  of volunteers.  I don't know if they have insurance.  I don't
17  know.
18      But all of these things I think would be important if
19  somebody files a motion for summary judgment, you know, based
20  on the Supreme Court's ruling in *Smith*.  Has to be more than
21  sort of a passing relationship.
22         MR. KIM:  So with respect to discovery, we've
23  actually been trying to depose the OIA for quite some time now.
24         THE COURT:  Okay.
25         MR. KIM:  But our understanding is that the OIA is

1  not willing to put up a designee because everyone is a DOE
2  employee.  And so we're sort of in this weird situation.
3        THE COURT:  Okay.  Well, meet with Judge Trader.  I
4  believe he's the magistrate judge with you folks.
5        MR. KIM:  Yeah.  And of course we have yet to, you
6  know, meet and confer explicitly about some of these issues.
7  But, you know, I think these will be resolved eventually.
8        THE COURT:  Okay.  Very good.  All right.  Thank
9  you.
10       Mr. Hosoda, I'll give you the last word.
11       MR. HOSODA:  Thank you.  I just can't let the record
12 stand.  I think counsel inadvertently overspoke that I had
13 conceded that the OIA had received federal funding or federal
14 benefits, and I just can't leave that alone.
15       THE COURT:  Right, right.  I don't think that's what
16 the record -- I don't -- okay.  But I took it to mean he was
17 saying that if they indirectly have received it, then they
18 would be under the ambit of Title IX, which is -- I think is
19 what the case law says.  It's just we don't know at this point.
20       MR. HOSODA:  Right.  And the second point was with
21 respect to discovery, I was surprised to hear him say that
22 because I've been working very cooperatively with them, and the
23 depositions of the OIA are coming up, have been set.  We have
24 been trying to schedule them for a while, mostly because of my
25 personal schedule.  But we're fully cooperative and it is

1  happening.
2          THE COURT:  Okay.
3          MR. HOSODA:  We didn't talk about staging and I'm
4  not sure this one will be, you know, a summary judgment so that
5  it should be bifurcated or proceeded differently.  So I think
6  we should just continue on with the discovery as we're going
7  along.
8          THE COURT:  Very good.  Have you guys had your
9  Rule 16 yet?
10         MR. HOSODA:  We have.
11         THE COURT:  So you have your deadlines and
12 everything.
13         MR. HOSODA:  Thank you, Your Honor.
14         THE COURT:  Okay.  Thank you very much, counsel.
15     And the court denies the motion to dismiss and a written
16 order will be prepared regarding the same.
17     All right.  I wish everyone a good day and a good weekend.
18     We are in recess.  Thank you.
19         (Proceedings concluded at 10:01 A.M.)
20
21
22
23
24
25

```
 1                  COURT REPORTER'S CERTIFICATE
 2
 3          I, DEBRA READ, Official Court Reporter, United
 4  States District Court, District of Hawaii, do hereby certify
 5  that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 6  true, and correct transcript of the stenographically reported
 7  proceedings held in the above-entitled matter and that the
 8  transcript page format is in conformance with the regulations
 9  of the Judicial Conference of the United States.
10
            DATED at Honolulu, Hawaii, April 22, 2019.
11
12
13                       /s/ Debra Read
14                       DEBRA READ, CSR CRR RMR RDR
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT