UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| A. B., BY HER PARENTS AND NEXT FRIENDS, C.B. AND D.B., AND T. T., BY HER PARENTS AND NEXT FRIENDS, K.T. AND S.T.,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII STATE DEPARTMENT OF EDUCATION, and OAHU INTERSCHOLASTIC ASSOCIATION,<br><br>Defendants. | CIV. NO. 18-00477 LEK-RT |

**ORDER DENYING DEFENDANT OAHU INTERSCHOLASTIC
ASSOCIATION'S MOTION TO DISMISS COMPLAINT**

Before the Court is Defendant Oahu Interscholastic Association's ("OIA") Motion to Dismiss Plaintiffs A.B., by her parents and next friends, C.B. and D.B., and T.T., by her parents and next friends, K.T. and S.T.'s Complaint for Declaratory and Injunctive Relief, Filed December 6, 2018 ("Motion"), filed on January 18, 2019. [Dkt. no. 22.] Plaintiffs A.B., by her parents and next friends, C.B. and D.B., and T.T., by her parents and next friends, K.T. and S.T. ("Plaintiffs"), filed their memorandum in opposition on March 15, 2019, and the OIA filed its reply on March 22, 2019. [Dkt. nos. 44, 47.] Defendant Hawaii State Department of Education ("DOE") filed a statement of no opposition on

March 15, 2019.  [Dkt. no. 45.]  This matter came on for hearing on April 5, 2019.  The OIA's Motion is hereby denied because Plaintiffs have stated sufficient facts to state a plausible claim against the OIA.

**BACKGROUND**

Plaintiffs filed the instant action on December 6, 2018, asserting federal question jurisdiction.  [Complaint (dkt. no. 1.) at ¶ 8.[1]]  Plaintiff A.B. is a seventeen year-old, twelfth-grade student at James Campbell High School ("Campbell"), who is a member of the Campbell girls' varsity water polo and swimming teams.  Plaintiff T.T. is also a seventeen year-old, twelfth-grade student at Campbell, who is a member of the Campbell girls' varsity water polo and swimming teams.  [Id. at ¶¶ 11-12.]

According to the Complaint, the DOE is a state administrative agency that manages 292 public schools within the State of Hawai`i, including Campbell, which is a four-year public high school.  Plaintiffs allege the DOE receives federal financial assistance and is subject to the anti-discrimination provisions of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq*.  [Id. at ¶ 13.]  The OIA is an unincorporated athletic association composed of the DOE's

---

[1] Plaintiffs have filed this case as a class action lawsuit, but have not yet obtained certification of the class.

2

secondary schools on the island of Oahu, including Campbell. Plaintiffs allege both that the OIA is an "instrumentality of, and is controlled by the DOE," and that they are "pervasively entwined" because the OIA's Executive Director is a DOE employee, and all five regular members of the OIA's Executive Council are principals of DOE high schools. [Id. at ¶¶ 14-15.] Because of its connections with the DOE, Plaintiffs allege the OIA receives federal financial assistance, and is subject to the anti-discrimination provisions of Title IX. [Id. at ¶ 16.]

Plaintiffs allege that female athletes at Campbell suffer worse treatment, fewer benefits, and fewer opportunities than male athletes, and that the OIA's policies and practices control and/or greatly influence this disparate treatment. [Id. at ¶¶ 51-52.] Specifically, Plaintiffs allege the OIA's discriminatory practices are evident in its: (1) competitive facilities; (2) scheduling of games; (3) travel opportunities; and (4) publicity and promotion. [Id. at ¶ 56.] As to the DOE, Plaintiffs allege it has failed to provide its female student athletes with: (1) athletic locker rooms,[2] practice facilities, and competitive facilities; (2) equipment and supplies;

---

[2] According to the Complaint, an "athletic locker room" refers to a school's stand-alone athletic locker room facility that is usually located near the schools' outdoor sports facilities, such as track and field, cross-country, football, baseball, and soccer fields. [Complaint at ¶ 57 n.16.]

3

(3) scheduling of games and practice time; (4) availability and quality of coaching; (5) travel opportunities; (6) medical and training services and facilities; and (7) publicity and promotion. [Id. at ¶ 55.] Plaintiffs allege the DOE and OIA determine which competitive facilities will be used by DOE athletic programs during interscholastic competition, and consistently allocate better facilities to boys' athletic programs. [Id. at ¶¶ 91-92.] Both the DOE and OIA control the scheduling of athletic seasons, games, and tournaments, and allegedly dedicate three quarters of the available Friday night spots – which are preferable because they attract the largest student and community support – to boys' programs. [Id. at ¶¶ 99-101.] In addition, the DOE and OIA give preferential travel and publicity to the Campbell boys' football and baseball programs by sending these teams to off-island travel for athletic competitions, while Campbell girls' athletic programs did not have similar opportunities. [Id. at ¶¶ 125-29.]

Plaintiffs allege that they have submitted numerous complaints to the DOE regarding unfair treatment, and have made written and oral requests to obtain equal accommodation and/or engage in discussions with the DOE regarding the same. [Id. at ¶¶ 157-59.] In response, the DOE and Campbell administrators have allegedly retaliated by, *inter alia*, threatening to cancel the Campbell girls' water polo team, their season, or both; and

forcing the water polo team to resubmit their program paperwork after a particularly heated meeting between the water polo athletes, their parents, the Campbell Principal, and the Athletic Director, even though it had been previously submitted. [Id. at ¶ 160.]

Plaintiffs have alleged the following claims: 1) a violation of Title IX against Defendants based on their failure to take remedial actions to meet the anti-discrimination provisions under Title IX, and their continued unequal treatment of female athletes at Campbell ("Count I"); 2) a violation of Title IX against Defendants based on their failure to provide Campbell female athletes with equivalent athletic participation opportunities ("Count II"); and 3) a violation of Title IX against the DOE based on the DOE's retaliation for Plaintiffs' attempts to report and/or discuss the DOE's practice of sex discrimination ("Count III").

In the instant Motion, the OIA argues Plaintiffs' Title IX claims against the OIA should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), because the Complaint does not allege that the OIA is a recipient of federal funds which is a required element of a claim brought under Title IX, and therefore, fails to state a claim upon which relief can be granted. In response, Plaintiffs argue the Complaint pleads sufficient facts to support their theory that the OIA is an

indirect recipient of federal funding, and also sets forth the alternative theories that the OIA is subject to Title IX liability as a sub-unit of a directly funded institution, *i.e.*, the DOE; and as the controlling authority over a federally funded program.

## **DISCUSSION**

Title IX provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The definition of a "program or activity" under Title IX is broad, and encompasses the operations of, *inter alia*: a "department, agency, special purpose district, or other instrumentality of a State or of a local government"; a local educational agency; an "entire corporation, partnership, or other private organization, or an entire sole proprietorship"; and any other entity that is established by two or more of the foregoing entities. 20 U.S.C. § 1687. Thus, for an entity to be liable under Title IX, it must be both a "program or activity" as defined under § 1687, and a recipient of "Federal financial assistance." See § 1681.

6

The Ninth Circuit has stated that receipt of "federal financial assistance can be direct or indirect." Sharer v. Oregon, 581 F.3d 1176, 1181 (9th Cir. 2009) (alterations, citation, and quotation marks omitted).[3] However, an entity that "merely **benefits** from federal funding" is not a recipient of federal funds. See Nat'l Coll. Athletic Ass'n v. Smith, 525 U.S. 459, 468 (1999) (emphasis added). In Smith, the United States Supreme Court reviewed the narrow question of whether the National Collegiate Athletic Association ("NCAA"), which received dues from recipients of federal funds, is for the same reason, a recipient itself. Id. at 469.[4] After revisiting its prior decisions in Grove City College v. Bell, 465 U.S. 555

---

[3] Sharer addressed similar anti-discrimination language under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (*preempted on other grounds*, Aviation and Transportation Security Act, 49 U.S.C. § 44935), which prohibited discrimination on the basis of disability in any program or activity that receives federal financial assistance which the Supreme Court recognized as nearly identical in language to Title IX. See Sharer, 581 F.3d at 1181.

[4] In Smith, the pro se plaintiff, Renee Smith, sued the NCAA under Title IX, alleging that it had discriminated against her on the basis of sex by denying her permission to play intercollegiate volleyball at institutions that received federal funds. 525 U.S. at 462. After the district court refused to permit Smith to amend her pro se complaint, the Court of Appeals for the Third Circuit reversed, holding that the NCAA's receipt of dues from federally funded member institutions brought the Association within the scope of Title IX. Id. The Supreme Court vacated and remanded the Third Circuit's decision. Id.

7

(1984),[5] and United States Department of Transportation v. Paralyzed Veterans of America, 477 U.S. 597 (1986),[6] the Supreme Court distilled the following rule: "Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not." Smith, 525 U.S. at 468.  Applying this rule to the facts in Smith, the Supreme Court held that Smith's complaint did not state a claim against the NCAA under Title IX because she had not alleged that the NCAA members' dues were "earmarked for this

---

[5] Of its decision in Grove City, the Supreme Court stated:

> [W]e held that a college receives federal financial assistance when it enrolls students who receive federal funds earmarked for educational expenses.  Finding "no hint" that Title IX distinguishes "between direct institutional assistance and aid received by a school through its students," we concluded that Title IX "encompass[es] **all** forms of federal aid to education, direct or indirect." [Grove City], [465 U.S.] at 564 (internal quotation marks omitted).

Smith, 525 U.S. at 466-67 (emphasis and some alterations in Smith).

[6] The Supreme Court noted that Paralyzed Veterans addressed the scope of § 504 of the Rehabilitation Act and established that "airlines are not recipients of federal funds received by airport operators for airport construction projects, even when the funds are used for projects especially beneficial to the airlines."  Smith, 525 U.S. at 467.  To do otherwise would "yield almost 'limitless coverage.'"  Id. (quoting Paralyzed Veterans, 477 U.S. at 608).

8

purpose," and at most, the "receipt of dues demonstrates that [the NCAA] indirectly benefits" from federal assistance. Id.

The OIA cites predominantly to Smith in support of its argument that the OIA is neither a direct nor indirect beneficiary of federal funds since Plaintiffs have not alleged that any federal funds were "earmarked" for the purpose of the OIA, therefore the OIA is not liable under Title IX. The OIA also points to portions of paragraphs 13, 14, and 16 of the Complaint, arguing that none of these allegations support the reasonable inference that the OIA is either a direct or indirect recipient of federal funds, and merely recite the elements of a cause of action.

Here, the Complaint alleges: that the DOE "receives federal financial assistance and is subject to the anti-discrimination provisions of Title IX"; [Complaint at ¶ 13;] that the "OIA has controlling authority over . . . the DOE's interscholastic athletic programs, including competitive facilities; scheduling of seasons, games, and tournaments; travel; publicity and promotion; and budget"; [id. at ¶ 16] that the OIA indirectly receives federal financial assistance; [id.;] that the OIA "acts under the control of and in close coordination with the DOE . . . [and] makes decisions concerning interscholastic athletics" at Campbell; [id. at ¶ 5;] and finally, that the Executive Director of the OIA "is a DOE

9

employee, and all five regular members of the OIA's Executive Council are principals of DOE high schools and therefore also DOE employees," [id. at ¶ 15].

Because the Motion seeks dismissal based on Fed. R. Civ. P. 12(b)(6), this Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (some citations omitted) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555-56 (2007)). Taking the foregoing allegations in the Complaint as true, Plaintiffs allege sufficient factual matter to state a plausible claim that the OIA is an indirect recipient of federal funds, and may be subject to the anti-discrimination provisions of Title IX. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The allegations in the Complaint are not merely conclusory, or a recitation of the elements of a cause of action; rather, "sufficient allegations of underlying facts" are stated which give fair notice of where to begin in defending the case. See Starr v. Baca, 652 F.3d 1202, 1216) (9th Cir. 2011). Finally, the instant facts are distinguishable from Smith, where the Supreme Court was presented with the narrow question of whether the NCAA was an

indirect recipient of federal funds by virtue of accepting dues from federally assisted educational institutions. See Smith, 525 U.S. at 469. Here, the Complaint sets forth allegations that employees of the DOE - a federally funded program – not only take part in, but serve as executive directors and members of the OIA's governing body. [Complaint at ¶ 15.] This is well beyond the involvement addressed in Smith, and supports finding that Plaintiffs state a claim against the OIA under Title IX, based on its indirect receipt of federal funds.

As to Plaintiffs' assertion that the Complaint provides sufficient factual allegations that the OIA had control over a federally funded program and therefore is plausibly liable under Title IX, there is no definitive controlling authority stating that this is a viable theory of liability. The Supreme Court in Smith declined to address this argument because it was presented for the first time on appeal. See Smith, 525 U.S. at 469-70.[7] Nevertheless, courts outside of the

---

[7] In Smith, the Supreme Court stated:

> Second, Smith argues that when a recipient cedes controlling authority over a federally funded program to another entity, the controlling entity is covered by Title IX regardless whether it is itself a recipient.
>
> As in Roberts v. Galen of Va., Inc., [525 U.S. 249,] 253-254 [(1999)], and United States v. Bestfoods, 524 U.S. 51, 72-73 (1998), we do not
>                                       (. . . continued)

Ninth Circuit have ruled that an entity that has controlling authority over a federally funded program is also subject to the anti-discrimination provisions of Title IX. See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1294 (11th Cir. 2007) ("[I]f we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to . . . avoid Title IX liability"); Horner v. Ky. High Sch. Athletic Ass'n, 43 F.3d 265, 271-72 (6th Cir. 1996) (because Kentucky's state laws conferred authority to the Kentucky State Board of Education ("BOE") and Kentucky High School Athletic Association ("KHSAA") to control certain activities for the federally funded Kentucky Department of Education, the BOE and KHSAA were both subject to Title IX); Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n, 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000) (ruling that "any entity that exercises controlling authority over a federally funded program is subject to Title IX, regardless of whether that entity is itself a recipient of federal aid").

These out of circuit cases are persuasive and instructive. Because the Complaint alleges that the OIA had

---

<pre>
          decide in the first instance issues not decided
          below.
</pre>
525 U.S. at 469-70 (some citations omitted).

controlling authority over the DOE's interscholastic athletic programs, including "competitive facilities; scheduling of seasons, games, and tournaments; travel; publicity and promotion; and budget," [Complaint at ¶ 16,] the Court concludes that Plaintiffs have provided sufficient factual matter to plausibly allege that the OIA is the controlling authority over the federally funded DOE's athletic programs. Therefore, the Complaint plausibly alleges that the OIA may be subject to the anti-discrimination provisions of Title IX under a "controlling authority" theory. Accordingly, the Motion is denied because there is at least a plausible chance that Plaintiffs may succeed on their claims against the OIA, based on the allegations in the Complaint.

## CONCLUSION

On the basis of the foregoing, the OIA's January 18, 2019 Motion to Dismiss Plaintiffs A.B., by her parents and next friends, C.B. and D.B., and T.T., by her parents and next friends, K.T. and S.T.'s Complaint for Declaratory and Injunctive Relief, Filed December 6, 2018, is HEREBY DENIED.

In light of Plaintiffs' Motion for Leave to File First Amended Complaint ("Motion to Amend"), [filed 5/16/19 (dkt. no. 69),] it is not necessary for the OIA to file its answer to the Complaint at this time. If the Motion to Amend is denied, the OIA is ORDERED to file its answer to the Complaint within

**twenty days** after the magistrate judge issues the order denying the Motion to Amend.  If the Motion to Amend is granted and Plaintiffs file an amended complaint, the answers to the amended complaint will be due in the normal course.

    IT IS SO ORDERED.

    DATED AT HONOLULU, HAWAI`I, May 24, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**A.B., ET AL. VS. HAWAI`I STATE DEPARTMENT OF EDUCATION, ET AL;**
**CV 18-00477 LEK-RT; ORDER DENYING DEFENDANT OAHU INTERSCHOLASTIC**
**ASSOCIATION'S MOTION TO DISMISS COMPLAINT**