1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF HAWAII

3
    A.B. and A.M.B., by their      )  CV 18-00477LEK-RT
4   parents and next friends,      )
    C.B. and D.B., and T.T.,       )
5   by her parents and next        )  Honolulu, Hawaii
    friends, K.T. and S.T.,        )  September 19, 2019
6                                  )
             Plaintiffs,           )  (59-1) MOTION TO CERTIFY
7                                  )  CLASS
      vs.                          )
8                                  )
    HAWAII STATE DEPARTMENT OF      )
9   EDUCATION and OAHU             )
    INTERSCHOLASTIC ASSOCIATION,   )
10                                 )
             Defendants.           )
11  _____)

12
                      TRANSCRIPT OF PROCEEDINGS
13           BEFORE THE HONORABLE LESLIE E. KOBAYASHI
                  UNITED STATES DISTRICT JUDGE
14
    APPEARANCES:
15
    For the Plaintiffs:       ELIZABETH KRISTEN, ESQ.
16                            Legal Aid At Work
                              180 Montgomery Street, Suite 600
17                            San Francisco, California 94104
                              *PRO HAC VICE*
18
                              MATEO CABALLERO, ESQ.
19                            ACLU of Hawai'i
                              PO Box 3410
20                            Honolulu, Hawaii 96801

21                            JAYMA M. MEYER, ESQ.
                              Simpson Thacher & Bartlett LLP
22                            425 Lexington Avenue
                              New York, New York 10017-3954
23

24

25

```
 1   APPEARANCES CONTINUED:

 2   For the Defendant         KENDALL J. MOSER, DAG
     Hawaii State Department   WILLIAM R.K. AWONG, DAG
 3   of Education:             Office of the Attorney General-
                               State of Hawaii
 4                             425 Queen Street Suite 220
                               Honolulu, Hawaii 96813
 5
     For the Defendant         LYLE S. HOSODA, ESQ.
 6   Oahu Interscholastic      LAUREN NAKAMURA, ESQ.
     Association:              Hosoda & Bonner
 7                             Three Waterfront Plaza
                               500 Ala Moana Boulevard, Suite 499
 8                             Honolulu, Hawaii 96813

 9

10

11

12

13

14

15

16

17

18

19

20

21
     Official Court Reporter:  Debra Read, RDR
22                             United States District Court
                               300 Ala Moana Boulevard
23                             Honolulu, Hawaii 96850
                               readit3949@gmail.com
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

1   THURSDAY, SEPTEMBER 21, 2019                           2:45 P.M.

2              THE COURTROOM MANAGER:  Civil No. 18-00477 LEK-RT,

3   A.B., by her parents and next friends, C.B. and D.B., et al.,

4   versus Hawaii State Department of Education, et al.

5         This case has been called for a hearing on Plaintiffs'

6   Motion for Class Certification and Defendant Hawaii State

7   Department of Education's Motion to Dismiss Plaintiffs' First

8   Amended Complaint for Declaratory and Injunctive Relief.

9         Counsel, your appearances for the record, please.  Please

10  speak into a microphone.

11             MR. CABALLERO:  Mateo Caballero from the ACLU of

12  Hawaii, and with me are Elizabeth Kristen from Legal Aid At

13  Work and Jayma Meyer from Simpson Thacher & Bartlett on behalf

14  of plaintiffs.

15             THE COURT:  Good afternoon to all of you.

16             MR. CABALLERO:  Good afternoon.

17             THE COURT:  Mr. Moser?

18             MR. MOSER:  Good afternoon, Your Honor.

19         Kendall Moser and William Awong from the Department of the

20  Attorney General.  We represent Defendant Department of

21  Education.

22             THE COURT:  All right.  Good afternoon to both of

23  you.

24         Ms. Nakamura.

25             MS. NAKAMURA:  Good afternoon, Your Honor.

UNITED STATES DISTRICT COURT

1      Lauren Nakamura and Lyle Hosoda on behalf of Defendant

2   Oahu Interscholastic Association.

3          THE COURT:  All right.  Good afternoon to both of

4   you as well.  You may be seated.

5          I apologize for not getting a written inclination

6   out.  Mr. Hosoda knows we've been in trial for quite some time

7   so -- on various trials, so I'm going to read an oral

8   inclination and then I invite oral argument with regard to my

9   inclination.

10     So as to Plaintiffs' Motion for Class Certification, the

11  court is inclined to find that plaintiffs seek to represent a

12  class and they are therefore required to satisfy the threshold

13  requirements of Rule 23(a) which provides that a case is

14  appropriate for certification if:

15     1.  the class is so numerous;

16     2.  there are questions of law or fact common to the

17  class;

18     3.  the claims or defenses of the representative parties

19  are typical of the claims and defenses of the class; and

20     4.  the representative parties will fairly and adequately

21  protect the interests of the class.

22     In addition, the plaintiffs here are seeking injunctive

23  and declaratory relief, so therefore, Rule 23(b)(2) applies,

24  and they have to meet the requirements of that as well.

25  Plaintiffs, of course, seek the burden -- or bear the burden of

1    demonstrating they satisfy each of the Rule 23 requirements at

2    issue.

3         So what the plaintiffs want to do here is they're asking

4    the court to certify a class of present and future Campbell

5    High School female students who are being discriminated against

6    on the basis of sex by the Department of Education and the Oahu

7    Interscholastic Association and are being retaliated against by

8    the Department of Education for complaining about

9    discrimination.  That is the gravamen of their intentions.

10        First, the court addresses the issue of mootness which I

11   think has been raised, sort of confusing it with standing.  But

12   with regard to the issue of mootness, the court is inclined to

13   find that the plaintiffs' claims are inherently transitory

14   enough and that the harm will most certainly repeat in the

15   future.  In these types of cases, the named plaintiffs' here

16   claim is capable of repetition yet evading review.  Therefore,

17   the court's inclined to find that this exception to mootness

18   exists in this case.

19        Now, as to numerosity, I do have a few questions for the

20   plaintiffs' counsel, so if you could address it at that time.

21   Based on your representation in the pleading or on the motion,

22   you've indicated there are hundreds of potential members

23   because of the number of female students who are or will be

24   athletes at Campbell High School.  In the motion you provided a

25   table of female athletes for the 2016 to '17 school year which

1    was 279 which was represented; for the 2017 to 2018 school year

2    it's represented the number's 269; and for the 200 -- I mean,

3    2018 to 2019 school year, the number represented is 198.  So if

4    that's correct, then that would support that there are hundreds

5    of potential members and therefore I'm inclined to find that

6    that's sufficient to meet numerosity.

7         But when I looked at Exhibit A and Exhibit B to the

8    motion, it supported that there are an average of 3,106 -- I'm

9    sorry -- 3,104 students enrolled for school years -- or that's

10   the average for school years 2015 to 2016 and 2018 to 2019, and

11   there's support that the female students constitute 48 percent

12   of the student body.  So that would be approximately 1,490

13   students.

14        But it doesn't tell me where you get this information

15   about the female athletes being approximately 200 or more, so

16   if you could point that out in your oral argument.  Assuming

17   that you can show support for that, then, you know, I think

18   you'd be able to meet numerosity.

19        Now, with regard to commonality, the plaintiffs identify

20   several common questions regarding the defendants' alleged

21   violations of Title IX.  The fact that the named plaintiffs

22   participate in a different sport than others in the class does

23   not defeat commonality.  Court notes in *Foltz v. Delaware State*

24   *University*, it's a Delaware case in the District of Delaware,

25   269 F.R.D. 419, it's a 2010 case.  There, 15 of the

1    university's 21-member women's equestrian team initiated the

2    action on behalf of themselves and other similar situated

3    female athletes at the university.  The fact that they were on

4    the equestrian team and they brought it on behalf of all these

5    other women athletes who participated in various and sundry

6    sports, the court there found that the fact that they were

7    equestriennes and complaining of the university's intent to

8    shut down the equestrian team did not defeat the fact that

9    their claims were common with typical females who participated

10   in other sports.

11       So as the court understands the complaint that's been

12   filed here, even though the named plaintiffs may play a

13   different sport than many of the other females who play sports

14   at Campbell High School, the common question as to all of them

15   is in terms of sports equipment, locker room availability, the

16   school support of their type of sport, and opportunities

17   afforded to them and their coaches.

18       So I'm inclined to find it is common with and typical of

19   females who compete in high school sports at Campbell High

20   School.

21       With regard to adequacy, I'm inclined to find there are no

22   conflicts of interest among the proposed class members which

23   would preclude the named plaintiffs from meeting

24   Rule 23(a)(4)'s adequacy requirement.

25       Now, there is also, you know, request for injunctive and

1    declaratory relief, so the class plaintiffs have to meet

2    Rule 23(b)(2) requirements.  As the Ninth Circuit has

3    explained, Rule 23(b)(2) requirements are as stated in

4    *Wal-Mart Stores, Inc. V. Dukes*, "And where members of a

5    putative class seek uniform injunctive or declaratory relief

6    from policies or practices that are generally applicable to the

7    class as a whole, then typically Rule 23(b)'s requirements are

8    met," and I'm inclined to find that here so with regard to the

9    Rule 23(b)(2).

10        And lastly, I'm inclined to appoint lead counsel for

11   plaintiffs, specifically ACLU Foundation.

12        So that's the court's inclination.  It is an inclination.

13   I set forth my inclination to give you an idea what I'm

14   thinking about and particular things I'd like you to address;

15   however, I acknowledge you know the case much better than I do

16   and you have prepared all the exhibits and the declarations, so

17   if there's something that you believe I've missed or that I

18   should take a second look at, I would ask you to mention that

19   in oral argument so that I can go over that information.

20        Given my inclination, though, I'm going to ask the

21   defendants first to address the court's inclination, and then I

22   would like the plaintiffs -- you're welcome to argue whatever

23   you want to -- but I'd like you to address my question with

24   regard to numerosity.

25        All right.  Mr. Moser.

1          MR. MOSER:  Your Honor, the first point in the

2     Court's inclination was the applicability of the inherently

3     transitory exception to mootness, and I hope I do this in the

4     order I should do it, but I'd like to address that first.

5          Of course, that's part of the plaintiffs' argument in

6     their reply memo that the inherently transitory exception to

7     mootness applies to the claims made by A.B. and T.T.

8          It's the Department of Education's position that that

9     exception is irrelevant because both A.B. and T.T.'s claims

10    fail for the same reasons as A.M.B.'s claim.

11         And just to maybe get to the point as to why I believe

12    those claims fail -- and I'm bearing in mind the Court's

13    inclination as to commonality -- A.B. and T.T. played water

14    polo at the same aquatic center where there is no argument that

15    there's disparity between the girls' and the boys' facilities.

16    So what I'm getting at is that it's our position that A.B. and

17    T.T. did not have claims in their own rights.

18         And if I might back up, I would say that to be a class

19    representative, a named plaintiff must have a claim in her own

20    right and be a member of the class.  A.B.'s claim must be

21    complete in and of itself and she cannot bootstrap any of the

22    elements off other putative class members.

23         As I said, A.B. plays water polo, and both the girls and

24    boys at Campbell High School use the facilities at the K. Mark

25    Takai Veterans Aquatic Center in Waipio.  A.B. has not pled

1   disparity between the girls' and the boys' facilities there nor

2   is there, in fact, any disparity between the facilities there.

3        A.B. is not receiving a program that is inferior to

4   similarly-situated boy athletes.

5        Now, A.B. has submitted a declaration from a Campbell High

6   schoolgirl who plays soccer, and she is the subject of the

7   pending motion to file a Second Amended Complaint.  In that

8   declaration, that girl, identified as by initials A.P., states

9   that she, "as a soccer player receives unequal treatment

10  compared to the boys at Campbell who play soccer," and that

11  declaration might have supported class certification if A.B.

12  herself stated the claim in her own right.  But A.B. can't rely

13  on other putative class members to fill in the holes in her

14  claim.

15        THE COURT:  Agreed.  But if you look at her

16  declaration, she clearly states about the mistreatment of

17  playing time, the practice facilities -- this is at

18  paragraph 14 of her declaration.

19        MR. MOSER:  Your Honor, if I may, I'm sorry -- very

20  sorry to interrupt.  Are we referring to A.M.B.'s declaration

21  or A.P.'s declaration?  I just want to make sure I'm looking at

22  the right thing.

23        THE COURT:  Oh, okay.  A.B.  You're saying A.B.

24  cannot meet the --

25        MR. MOSER:  A.P.  I'm sorry --

```
 1              THE COURT:  Oh, I'm sorry.

 2              MR. MOSER:  Yeah.  The new -- well, potential new

 3    plaintiff in the case, A.P., as in Paul.  She's the young woman

 4    who plays soccer, and her declaration was submitted after the

 5    fact in support of a motion for class certification.

 6         But my contention is that --

 7              THE COURT:  Well, you're talking about water polo,

 8    right?

 9              MR. MOSER:  That's where A.M.B. plays.

10              THE COURT:  Right.

11              MR. MOSER:  And my argument is that because there's

12    no disparity at the water polo facility or the aquatics

13    facilities, the best that A.M.B. is able to do is get a

14    declaration from another young woman named A.P., as in Paul,

15    who says essentially that the soccer facilities for the girls

16    aren't the same --

17              THE COURT:  Right.  So I'm talking about A.B.  She

18    brings claims on her own with regard to water polo that she

19    has --

20              MR. MOSER:  Yes.

21              THE COURT:  -- that's inherently transitory.

22              MR. MOSER:  Yes, if she had a claim in her own

23    right.

24              THE COURT:  That's what I'm saying.  She has a claim

25    in her own right, though.
```

 1              MR. MOSER:  And I guess that's where we differ.

 2              THE COURT:  Yeah.

 3              MR. MOSER:  And of course --

 4              THE COURT:  So that's why I asked you to look at

 5    A.B., as in boy's, declaration or affidavit, right?

 6              MR. MOSER:  And I'm sorry.  Paragraph 14 was it,

 7    Your Honor?

 8              THE COURT:  Paragraph 14, paragraph 15,

 9    paragraph 16, 17.  So there she makes specific -- or she gives

10    specific testimony with regard to unequal treatment of girls'

11    water polo team and girls' sports.  Specifically as to the

12    water polo team, she was saying, "The practice facilities are

13    never booked on time, never up to par.  Every year we started

14    practice without a pool on time and also practice right next

15    door to our competitors.  Our equipment was not up to

16    regulation.  It was a constant safety hazard.  The water polo

17    goals were never provided by Campbell," paragraph 16,

18    "inconsistent coaching," and so forth.

19         So that indicates more of a policy and -- I mean, even

20    though they have the same pool facility as the boys, the issue

21    that she seems to raise is that the provision of -- that there

22    was a policy not to provide them with equal footing in terms of

23    availability of the pool, equipment, et cetera.  So I'm trying

24    to understand your position that she doesn't at least raise an

25    arguable claim on her own behalf.

1          MR. MOSER:  Well, I guess that's all that I can say

2     about that, what I've already said.  Perhaps counsel for

3     co-defendant might maybe fill in some of that -- the blanks

4     that I might have left.

5          THE COURT:  Okay.

6          MR. MOSER:  If I may, Your Honor, there is one other

7     thing that I'd like to say.  It's not specifically a point

8     which the Court raised in its inclination, but it's with regard

9     to the proposed class definition, and the Court has already

10    read what the proposed class definition is.

11        We think that the class is not adequately defined or

12    ascertainable based on objective criteria.  As the Court notes,

13    the proposed class includes all female students at Campbell

14    regardless of whether they -- the athletic needs of both sexes

15    are being accommodated equally and regardless whether there is

16    no disparity between the girls' and boys' programs, and we've

17    already kind of talked about the aquatic center.

18        As the Court knows, Rule 23 requires a court's

19    certification order to define the class and class claims issues

20    or defenses; of course that's Rule 23(c).  So in addition to

21    the certification prerequisites, the four which have already

22    been laid out by the Court, in *Lilly v. Jamba Juice*, which is a

23    case from the Northern District of California, the court said,

24    "While it is not an enumerated requirement of Rule 23, courts

25    have recognized that in order to maintain a class action, the

1    class sought to be represented must be adequately defined and

2    clearly ascertainable."  And I don't think there's any, you

3    know, dispute about that amongst anybody.

4        In Moore's Federal Practice, if I might quote from there,

5    it says, quote, "Although the text to Rule 23(a) is silent on

6    the matter, a class must not only exist, but the class must be

7    susceptible of precise definition.  There can be no class

8    action if the proposed class is 'amorphous' or 'imprecise.'"

9    So the criteria must be objective.

10        And finally, one other case from the Eastern District of

11   California which came out a little earlier this year, case

12   called *Wilcox v. Swapp* --

13             THE COURT:  Is this in your brief?

14             MR. MOSER:  I'm afraid it is not.

15             THE COURT:  Yeah, then I cannot let you argue it.

16             MR. MOSER:  All right.

17             THE COURT:  You can ask me to provide a

18   supplemental, but I don't recall it in your briefing.

19             MR. MOSER:  Okay.  Well, essentially, I guess what I

20   would say is that a class definition has to be based on

21   objective criteria.  So when you have something like the

22   proposed class definition here, it says in part, quote, "or

23   were deterred from participating in athletics at Campbell."

24   That is subjective criteria.  And deterred by whom?  Deterred

25   by what?  This is precisely the kind of criteria that would

1   make an unmanageable class, so we think the Court should reject

2   the class in its proposal.

3       Thank you.  That's all I have at this point.

4           THE COURT:  All right.  Thank you.

5       Ms. Nakamura?

6           MS. NAKAMURA:  Thank you, Your Honor.  If I could

7   ask your indulgence, I know in your inclination you didn't

8   necessarily --

9           THE COURT:  Wait.  I'm sorry, Ms. Nakamura.

10      Can you hear her?

11      We're going to take a brief recess and we're going to have

12   our IT person come up.

13      (Brief recess.)

14          THE COURT:  All right.  We're back on the record.

15      All right.  The record will reflect the presence of

16   counsel.

17      Ms. Nakamura, your argument.

18          MS. NAKAMURA:  Thank you.

19      As I was saying, I know the Court's inclination did not

20   specifically reference standing and addressed mostly mootness,

21   but if I could ask for a brief indulgence to discuss some

22   standing issues.

23          THE COURT:  Yes.

24          MS. NAKAMURA:  The class definition as stated in the

25   moving papers is "all present and future Campbell female

1    students and potential students who participate, seek to

2    participate, and/or are or were deterred from participating in

3    athletics at Campbell High School."

4        Now, as a putative class representative, A. -- they must

5    be -- A.B. and T.T. must be members of that class.  Having

6    graduated from Campbell High School, they are, in fact, no

7    longer members of the class.

8        As it -- as counsel pointed out, DOE counsel pointed out,

9    in *Allee v. Medrano*, "A named plaintiff cannot require standing

10   through the back door, essentially bringing an action on behalf

11   of others that would have suffered -- that -- who suffered an

12   injury that would have afforded them standing had they been

13   named plaintiffs."

14       Now, this becomes particularly significant because while

15   plaintiffs argue that standing is measured at the time of the

16   filing of the complaint, and even if A.B. and T.T. lose

17   standing, they can still continue to be named plaintiffs.

18       But in situations where plaintiffs seek injunctive relief,

19   like here, the plaintiff must demonstrate that they

20   are -- there is a sufficient likelihood that they will again be

21   wronged in a similar way.  A case on point would be *City of*

22   *Los Angeles v. Lyons* which involved a plaintiff where the court

23   found that he lacked standing to pursue injunctive relief

24   against the police where he was unable to demonstrate that

25   there was a likelihood that he would again suffer from future

UNITED STATES DISTRICT COURT

1    chokeholds.

2         Similarly, in *Mansourian v. Regents* citing *Flint v.*

3    *Dennison*, the court held that, "Generally, once a student

4    graduates, he no longer has a live case or controversy

5    justifying declaratory or injunctive relief."

6         Now, with respect to plaintiff A.M.B. who is not graduated

7    but a -- I believe a sophomore at Campbell High School, it is

8    the defendant's position that she is not a member of the class

9    because the conduct she is complaining about has since been

10   rectified.

11        Further, in A.M.B.'s own declaration at paragraph 10, it

12   states, "I learned about some of the ways that female athletes

13   are treated unequally through my exposure to the problems that

14   my older sister, A.B., and the water polo team experienced over

15   the past few years.  For example, I saw how the water polo team

16   had to practice at the beach because they did not have access

17   to a practice pool.  I always see the female athletes carrying

18   their sports gear around campus all day, but I never see male

19   athletes carrying their stuff around all day."  Now, notably

20   A.M.B.'s declaration does not state that she herself has

21   experienced these issues, but that they're experiences she

22   observed through A.B. and T.T.

23        Now, with respect to the Court's point regarding mootness,

24   while the Court's inclination is that the offenses claimed here

25   are inherently transitory, essentially capable of repetition

1    yet evading review, the holding in *Sosna v. Iowa* is relevant

2    here.  There the court held that, "A litigant must have a live

3    claim at the time the class is certified; therefore, to prevail

4    on the instant motion, the plaintiffs must be members of the

5    class," which is our position that none of them are.

6         Now, specifically prior to class certification, the class

7    itself has no legal status outside of the interests of the

8    plaintiff.  Therefore, once class certification is granted, the

9    class then retains legal status separate from the plaintiff,

10   and the class then may continue despite the named plaintiffs

11   having either standing -- lost standing or being moot.

12        Today the class is not certified and therefore it has no

13   legal status outside of the plaintiffs' lack of standing and

14   mootness issues, which would allow the class action to proceed

15   without the named plaintiffs.

16        Particularly on point for mootness is a case *Kuahulu v.*

17   *Employers insurance of Wausau*, 557 F.2d 1334, (9th Cir. 1977).

18   There the court held that where a class was not certified

19   before an appellant's claim became moot, the court is required

20   to dismiss the entire appeal as moot.  Now, if you look at the

21   facts of that particular case, it involved the withholding of

22   disability benefits that the plaintiff were -- or they were

23   withhold or discontinued.  Now, the state decided during

24   appeals process that it would, in fact, reinstate the

25   disability benefits, essentially mooting Mr. Kuahulu's claims.

1      Now, this injury is very similar to what is being asserted

2  here where, such as here, the injuries complained about have

3  been resolved, such as a locker room being revised to include

4  both male and female teams, and equipment having since been

5  remedied or new equipment having been provided.  Both

6  situations can fall under the definition of capable of

7  repetition but evading review --

8           THE COURT:  Yes, but on point is *In Re:  National*

9  *Collegiate Athletic Association Athletic Grant-In-Aid Cap*

10 *Antitrust Litigation v. National Collegiate Athletic*

11 *Association* which is a Northern District of California case.

12 And there the same thing happened with regard to this.  And so,

13 "On a motion to seek class certification, if a plaintiff's

14 claim becomes moot before the district court certifies the

15 class, the class action normally also becomes moot.  However,

16 under the inherently transitory exception to mootness, a

17 district court may certify a class even though the plaintiffs'

18 representatives' claims are moot.  When the claims are so

19 inherently transitory that the district court will not have

20 enough time to rule on a motion for class certification before

21 the proposed representative's individual interests expire and

22 such claims will repeat as to the class because other persons

23 similarly situated will have the same complaint."

24      There, factually, it's very close to this case.  It was

25 litigation against the National Collegiate Athletic

1   Association, the NCAA, based on allegations that the NCAA

2   conspired to impose a cap on the amount of compensation schools

3   could provide to student athletes, so they had class

4   representatives or three separate classes.

5        But similarly, as here, you know, there were going to be

6   students who were going to graduate, and that's what happened.

7   She had standing at the time because she was a student.  Since

8   then she's graduated.  That's going to happen with --

9   eventually, God willing, all members of the class will be

10  graduating from high school, right?  So that's the whole

11  transitory nature.

12       So even though it becomes moot, maybe they made, you know,

13  changes in the policy and so forth as to the water polo team,

14  but because they're at least making the allegations that it's

15  systemic, that these policies are denying other female athletes

16  access to locker rooms and travelling outside the state and so

17  forth, those are always capable of repetition yet evading

18  review, right?

19       And so even though I agree with you, the general rule is

20  if the class plaintiffs' claims become moot, then it moots it

21  out before you can certify the class, where we are now.  But I

22  think that's the whole point where I sort of led with that

23  transitory mootness because I don't think standing's the issue,

24  quite frankly, and that's why I didn't address it, but I think

25  mootness is.

1       But when I look at the education cases, both this case,

2   the Northern District case, the Delaware State University case,

3   this Utah case, Jordan District -- School District which

4   involves a group of female students who want more athletic

5   opportunities, including a football team, at their high

6   schools, that's what they were suing for.  It's the same kind

7   of situation 'cause you have these girls who can only

8   participate for four years.  So at some point, depending how

9   the litigation moves along, you know, they're going to graduate

10  and it'll become -- their claims will become moot, but then the

11  issue still remains, the policies.

12      So I agree with you that the general rule is it's moot as

13  to the named plaintiff, but it's that transitory nature of it.

14  So when I look at the education cases as opposed to insurance

15  benefits or something, is there -- is there an education case,

16  a student athlete education case that you can point to me that

17  says no, that's not inherently moot or transitory in nature so

18  that you have this exception to the mootness rule?

19          MS. NAKAMURA:  At the moment I don't have one with

20  me.  If I do find one, if I may be allowed to submit

21  supplemental --

22          THE COURT:  Absolutely.  Sure.  And I think

23  Mr. Moser wanted to submit something on the case that he didn't

24  cite in his brief but wants to rely on.

25          MS. NAKAMURA:  Thank you.

1       With respect to the point the Court made regarding
2   numerosity, OIA would also like to point out that in addition
3   to not establishing where the 200 to 278 number came from, also
4   the plaintiffs have not provided any evidence regarding how
5   many girls seek to or -- and/or are deterred from participating
6   in athletics in Campbell.  As that is a portion of their own
7   class definition, they are also required to provide some sort
8   of statistical evidence or testimonial evidence regarding that.
9       Now --
10          THE COURT:  So let me ask you on that.  If they can
11  provide support for the number as to female student athletes
12  who have been denied equal access to practice facilities,
13  opportunities, et cetera, but they cannot show anything as to
14  those who have sought or been deterred student athlete
15  experiences, would you agree then that the class can be
16  certified as to those female student athletes who have been
17  denied or who are making a claim that they've been denied
18  athletic opportunity?
19          MS. NAKAMURA:  Yes, Your Honor.  If they are able to
20  provide the sufficient evidence as to the first prong that you
21  discussed and the class definition is therefore then narrowed
22  or tailored to what they can establish at class certification,
23  then, yes, then the class at least on the numerosity prong
24  could be certified.
25          THE COURT:  All right.  I think you're right, yeah.

UNITED STATES DISTRICT COURT

1          MS. NAKAMURA:  Now, with respect to the adequacy of

2     representation, I believe that the plaintiffs have kind of

3     missed the point of the OIA argument.  We do understand that a

4     class -- or a Title IX class action would require an analysis

5     of a program-wide situation; however, with respect to the

6     adequacy and also inherently the typicality of the claims

7     named, the claims of water polo or swimming students -- or

8     female athletes would not adequately -- or are typical of the

9     other class members.

10          Now, the purpose of the class action is to -- it was

11     designed to be an exception of the usual rule that would allow

12     only a named plaintiff to pursue their own interest, the goal

13     being to save judicial resources and litigate issues

14     potentially affecting every class member.

15          THE COURT:  Right.

16          MS. NAKAMURA:  So, as such, the fortunes of the

17     plaintiff become the fortunes of the class members.

18          THE COURT:  Right.  But even though they're asking

19     for specific things that are specific to soccer that may not be

20     identical to softball or another sport, they are talking about

21     funding, unequal policies, access to equipment, access to -- or

22     opportunities to travel outside Oahu to compete, venues.

23          So, you know, nobody's going to have a water polo, you

24     know, tournament at, you know, Aloha Stadium, so I don't think

25     they have to have that exact thing.  But they're claiming that,

1  you know, there's a disparity in general in sort of the

2  elite -- or the more, I guess, elite locales for the

3  competitions -- right? -- for the boys and the girls in a

4  particular sport.  But that doesn't mean that means only Aloha

5  Stadium.  I mean, they're meaning comparable with regard to

6  that.

7        So it doesn't have to be identical.  It's typical, right?

8  It's typical.  So it's a policy that is treating -- at least

9  based on their allegations -- are treating the boys' and girls'

10  teams in a disparate fashion -- right? -- differently,

11  and -- and not marginally differently, but significantly

12  differently in terms of quality, access, et cetera.

13        So I understand what you're saying, but I'm not persuaded

14  like only the softball girls get to be part of a class and then

15  there's not enough water polo girls, so they can't be a class.

16  That can't be it 'cause they're attacking policies that the DOE

17  and the OIA have that goes throughout girls' sports versus

18  boys' sports.

19          MS. NAKAMURA:  My point is that there are specific

20  and unique defenses with respect to the water polo and swimming

21  teams that would inherently distract from these putative class

22  representatives from adequately representing the class as a

23  whole, because there are unique defenses, like, for example,

24  the lack of a swimming pool facility.  As Mr. Moser pointed

25  out, there is no swimming pool at Campbell High School and

1    therefore both the male and female swim teams have to practice

2    off-site.  And further, there is not even a boys' water polo

3    team to compare the girls in a, quote/unquote, inequities to.

4              THE COURT:  Right.  But doesn't have to

5    be -- Title VII's[*sic*] not -- doesn't only limit you to a exact

6    sport requirement, because there's no girls' football team

7    either.  But you can't give the boys' football team a billion

8    dollars and all the equipment they want and, you know, let them

9    play at Aloha Stadium every time, and then you let the girls'

10   soccer team, you know, play, you know, on some back lot

11   somewhere with no lights, or -- you know what I mean?

12        But, yeah, they don't have a football team, but you have,

13   you know, another sports team that you're treating in a

14   disparate way.  I think Title IX would cover that.  I mean, you

15   don't have to have, you know -- you can have a girls'

16   equestrian team but you don't have a boys' equestrian team

17   because there's no interest in it, but that doesn't mean that

18   you can give the girls' equestrian team super-duper treatment

19   and not -- and then discriminate against the boys' wiffle ball

20   team based on, you know, you don't value that as much.  You

21   have to give equal opportunity and access, and that's what

22   they're asking.

23        I do agree with you on that seek and were deterred from.

24   I have a problem with that also with the numerosity, but...

25              MS. NAKAMURA:  Okay.  And understanding the Court's

1   position, I would like to, just to clear the record,

2   distinguish the instant case from the moving papers of

3   plaintiffs with respect to the citation of *Foltz v. Delaware*.

4        The speculative argument that is put forth in *Foltz* was

5   that if the university otherwise satisfies the obligations

6   under Title IX, then at that point it will become possible that

7   the named plaintiff will not adequately represent the interests

8   of the class and maybe abandon their stated commitment.  That

9   is not what the defendants are arguing here.  We're simply

10  arguing that there are unique defenses and strategies

11  particular to the current status of the named plaintiffs that

12  would detract from and defeat the prong of adequate

13  representation.

14            THE COURT:  Well, then once the class is certified,

15  they can always seek to have another class representative,

16  right?  So just because you have certain defenses to the class

17  plaintiff, though, doesn't really put her in conflict to the

18  others, in other words, all the water polo plaintiffs, because

19  you might have a defense saying, hey, you know, we're not

20  required to spend a million dollars to build you a new pool,

21  you know, and the boys don't have that too, so we're not in

22  violation of Title IX.  That might be a defense, but that

23  doesn't necessarily place her in conflict with the other

24  plaintiffs because the other plaintiffs are also owed a certain

25  duty under Title IX -- right? -- vis-à-vis their sport.

1    So it doesn't put them in conflict with one another, and

2  that's really what the case law goes to with regard to, you

3  know, the conflict aspect of the class representative.

4          MS. NAKAMURA:  And to that point, I would note that

5  there -- in the moving papers with respect to supporting that

6  there are other class members of this, the moving papers only

7  have declarations as to the named plaintiffs as -- and their

8  parents.  There are cases in which they -- the courts have used

9  the lack of any declarations from a putative class member or

10  several putative class members to find that the named

11  plaintiffs have not met the elements of typicality and adequate

12  representation.

13          THE COURT:  Okay.  Thank you.

14          MS. NAKAMURA:  Thank you.

15          THE COURT:  All right.

16          MS. KRISTEN:  Good afternoon, Your Honor.

17          THE COURT:  Good afternoon.  If you could just speak

18  into the microphone.  We're having some difficulty and I want

19  to make sure --

20          MS. KRISTEN:  Can you hear me?

21          THE COURT:  -- our court reporter -- thank you.

22          MS. KRISTEN:  Thanks.

23    This civil rights case is about ensuring the girls at

24  Campbell High School finally get that level playing field that

25  they were promised almost 50 years ago.  And I very much

1  appreciate Your Honor's inclination to grant class

2  certification here and your sophisticated understanding of the

3  way in which Title IX works as a total programatic analysis.

4       As you know, plaintiffs have presented three Title IX

5  claims here.  The first has to do with equal treatment and

6  benefits, and that necessarily requires a total program

7  analysis.

8       The second has to do with equal participation

9  opportunities, also looks at the entire athletic program and

10  whether girls and boys are getting a fair share of those

11  athletic resources.

12       And finally, we have a claim for class-wide retaliation.

13       All of these claims are appropriate for class treatment

14  and other district courts within the Ninth Circuit have

15  certified classes with the identical definition that's

16  presented here.  I'm happy to talk further about some of the

17  definitional issues, if you like, Your Honor, but I did want to

18  get to your specific question around numerosity.  And I know

19  you wanted to know a little more about where those numbers came

20  from with respect to the number of athletes.

21       And, of course, had defendants contested our numbers in

22  any way in their opposition, we certainly would have put in

23  more information in our reply brief.  So I apologize that Your

24  Honor feels that there could have been a little bit more on

25  that.

1          But if you look at Exhibit B to my declaration in the

2     moving papers, we've provided documents that we received from

3     the DOE in response to a UIPA request.

4          THE COURT:  Right, right, I did see that.  I did see

5     that Exhibit B, but, quite frankly, I'm not going to count up

6     all these numbers.

7          MS. KRISTEN:  Understood, Your Honor.

8          THE COURT:  Count how many were the girls and how

9     many were the boys.

10          MS. KRISTEN:  So what we did is we did count up all

11     the numbers and we had to make some assumptions because the

12     defendants did not provide us with complete data.  Despite

13     initiating discovery since January, we still have not gotten

14     the participation data that's as complete and accurate as we

15     would like it and --

16          THE COURT:  So where is it in your affidavit or

17     declaration how many girls based on this Exhibit B?

18          MS. KRISTEN:  What I put in -- in my declaration in

19     paragraph 7 was just the documentation and where the

20     documentation came from with respect to Exhibit B.  And so I

21     understand Your Honor's point that you really wanted to learn

22     more about the methodology and how exactly these numbers came

23     about, and we can certainly provide a supplemental declaration,

24     if that is something that would be helpful to the Court.

25          THE COURT:  Well, it won't be helpful to me.  It'll

UNITED STATES DISTRICT COURT

1    be fatal to your case because you folks have the burden of

2    proving that you meet each of the requirements, and numerosity

3    is right up there with the number one requirement.

4        So, you know, I'll give you leave -- I'm going to give

5    them leave too -- to further supplement the record, but so I

6    would specifically want you to do that because without that

7    information, it's just there unsupported and then I couldn't

8    rely on that.  So...

9        MS. KRISTEN:  I understand that Your Honor has an

10   independent obligation to satisfy yourself that we've met the

11   numerosity requirement.  We do not believe that numerosity was

12   contested here, but we will be happy to supplement the

13   record --

14       THE COURT:  Well, it's not -- I don't know if it's

15   contested, but clearly Rule 23 requires you folks to prove each

16   of the requirements of Rule 23.  So just because they're

17   willing to accept that or they're challenging it on other

18   grounds doesn't let you slide on what your requirement is under

19   the law.

20       MS. KRISTEN:  I understand your point, Your Honor.

21       THE COURT:  Okay.  So what about the other aspect

22   that we're talking about?  They're saying that you're overbroad

23   in terms of the class that you're asking to certify; that I

24   think Ms. Nakamura -- and I thank her for conceding that -- if

25   you can show the numbers, then those current and future female

1    athletes who would participate, who have or would participate

2    in sports -- if you can show that number basis for it, that

3    would meet numerosity for that.

4         But she was saying -- or what I took her argument to be,

5    that the other part of what you're seeking certification on,

6    those who attempted or were deterred from participating,

7    there's no evidence how many girls that was, and isn't that

8    something that's so speculative it can't be captured and

9    therefore I can't certify the class as to those girls?  Or are

10   you seeking those girls?

11        MS. KRISTEN:  Yes, Your Honor, we are seeking those

12   girls and we do believe that there is evidence in our motion

13   with respect to girls that were cut from teams.  Now, I -- I

14   concede that we don't have the exact specific numbers because

15   the defendants have not provided that information, but there

16   were cuts of girls in volleyball and softball, possibly soccer

17   and basketball.  There was -- there was information in our

18   motion that girls were participating in a jujitsu club that was

19   disbanded that possibly could have become an interscholastic

20   sport.

21        And the defendants have -- have not produced any evidence

22   that they've ever surveyed girls, but our belief is that girls

23   are interested in playing sports and that they're deterred.

24   And some of our clients' declarations say that because these

25   facilities are so bad, girls are deterred from playing sports.

1    They don't want to go out for the team, they don't have access

2    to these locker rooms.

3         While we don't have a precise number, I don't believe that

4    that's what's required, especially when we're also talking

5    about future girls where joinder is impractical.

6         So we believe that the evidence that we presented so far

7    with respect to the facilities, with respect to the named

8    plaintiffs, the putative class members about the terrible

9    conditions that they're enduring in the athletic program show

10   that girls are deterred in sufficient numbers -- in addition to

11   the girls that are participating in athletics -- to satisfy

12   numerosity.

13        THE COURT:  Well, okay.  I'm not persuaded with

14   regard to that because that seems too speculative to me.  I

15   mean, it does make common sense that if you have really junk

16   facilities that a lot of girls are going to look at that and

17   think I rather play AYSO or club ball or whatever than play

18   interscholastic sports.  I get that.  That makes sense on a

19   common sense level.

20        But I can't find numerosity based on, well, that makes

21   sense.  So, you know, there's -- what? -- 1490 girls and of

22   that there's 200 female athletes, so that leaves 1200 that

23   might have participated in some kind of sport?  I can't -- I

24   mean, I don't think the law allows me to do that.  So I'll let

25   you do additional briefing with regard to that as well.

UNITED STATES DISTRICT COURT

 1          MS. KRISTEN:  Thank you, Your Honor.  I appreciate

 2   that.

 3          And then just with respect to the ascertainability issue,

 4   I understand there may be some supplemental briefing on that,

 5   but I do believe that there's a Ninth Circuit case that has

 6   come out in 2017 that makes it clear that in the Ninth Circuit

 7   there is no such ascertainability requirement with respect to

 8   class actions, and so I don't believe those cases that are

 9   cited -- again, I didn't see them in the brief so I can't

10   address all of them -- but I don't believe those are relevant.

11          And then I would just -- if you have another moment, I

12   would like to turn this to my colleague, Mateo Caballero, to

13   address some of the standing and mootness arguments, if you'd

14   like to hear a little more argument on that.

15          THE COURT:  Okay.  I'm happy to hear it, but I don't

16   want you also to snap success -- snatch success -- or defeat

17   from the jaws of success.  So proceed at your -- at your

18   leisure, but also having been forewarned, yeah.

19          MR. CABALLERO:  Thank you.

20          THE COURT:  Right now I'm persuaded that there's,

21   you know, inherent transitory mootness, but go ahead.

22          MR. CABALLERO:  I'll be very brief, Your Honor.

23          I agree here the claims are inherently transitory because

24   plaintiffs graduate all the time, the class is changing, and

25   it's fluid; yet, the issues remain unaddressed.

 1       And it's not just that, Your Honor.  I would say it's also

 2   a question of allowing seniors to bring these types of

 3   lawsuits, otherwise, they wouldn't be able to ever -- you know,

 4   not just Title IX, but all sorts of other civil rights statutes

 5   wouldn't apply to seniors and they wouldn't be able to seek

 6   injunctive relief.

 7       And finally, you know, it would create all sorts of

 8   perverse incentives if the inherently transitory exception did

 9   not apply because, for example, you know, they could eliminate

10   a sport, just to, you know, get rid of standing, or get rid of

11   an injury, or they could cut someone from the team.  And so

12   without that exception, you know, it does create all sorts of

13   perverse incentives on the part of DOE and athletic directors.

14       That's it.  Thank you.

15           THE COURT:  Thank you.  I agree.

16       So let's talk about the briefing schedule then.  How about

17   if I give plaintiffs a week to provide me the documentation

18   with regard to the number of female athlete students?

19       And there's something else you wanted to address as well?

20           MS. KRISTEN:  It was the deterred issue, Your Honor,

21   and whether we could provide some additional information.

22           THE COURT:  Yes, yeah.  Exactly, yeah.  So the basis

23   for your wanting the -- the basis of your support for including

24   in the class certification those girls who wanted to

25   participate but were unable to and/or were deterred, right,

1   from even going out for the sport.

2       So if I can have that in a week, which gives us to what

3   date?

4               THE COURTROOM MANAGER:  September 26.

5               THE COURT:  September 26th.

6       And then for the defense, if you could get to the court

7   and to counsel by that same date the additional citations and

8   positions that you folks were taking with regard today.

9       And then I'll give you both a week after that to respond

10  to the additional briefing that you folks have provided.

11              THE COURTROOM MANAGER:  October 3rd.

12              THE COURT:  October 3rd.  And so brevity is the sole

13  of wit, so I do not want like a 50-page documentation on these

14  things.  So I will ask you to keep it to 10 pages or less with

15  regard to any submissions, both the initial as well as any

16  response.

17      All right?  Is there anything else that we need to address

18  on behalf of the plaintiffs, Ms. Kristen?

19              MS. KRISTEN:  Yes, Your Honor.  I just wanted to

20  clarify that 10 pages or less, would that also include any

21  exhibits that we might need to attach to show the numerosity?

22              THE COURT:  No.

23              MS. KRISTEN:  Okay.  Thank you, Your Honor, for that

24  clarification.

25              THE COURT:  Okay.  Mr. Moser, anything on behalf of

UNITED STATES DISTRICT COURT

1   your client, the DOE?

2                MR. MOSER:  No.  Thank you very much, Your Honor.

3                THE COURT:  Ms. Nakamura, anything on behalf of your

4   client, the OIA?

5                MS. NAKAMURA:  Nothing further, Your Honor.  Thank

6   you.

7                THE COURT:  All right.  Well, I thank all of you for

8   the briefing and excellent oral argument.  I wish you an

9   excellent afternoon and evening.

10        We're in recess.  Good day.

11                (Proceedings concluded at 3:38 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   COURT REPORTER'S CERTIFICATE

 2

 3           I, DEBRA READ, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 6   true, and correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the regulations

 9   of the Judicial Conference of the United States.

10

             DATED at Honolulu, Hawaii, September 21, 2019.
11

12

13                        /s/ Debra Read

14                   DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25
```