UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| A. B., BY HER PARENTS AND NEXT FRIENDS, C.B. AND D.B., AND T. T., BY HER PARENTS AND NEXT FRIENDS, K.T. AND S.T., <br><br>          Plaintiffs, <br><br>   vs. <br><br>HAWAII STATE DEPARTMENT OF EDUCATION, and OAHU INTERSCHOLASTIC ASSOCIATION, <br><br>         Defendants. | CIV. NO. 18-00477 LEK-RT |

**<u>ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

On May 3, 2019, Plaintiffs A.B., by her parents and next friends, C.B. and D.B.; and T.T., by her parents and next friends, K.T. and S.T. ("Plaintiffs"), filed their Motion for Class Certification ("Motion"). [Dkt. no. 59.] Defendant Oahu Interscholastic Association ("OIA") filed a memorandum in opposition ("OIA Opposition") on August 29, 2019 and Defendant Hawaii State Department of Education ("DOE") filed a substantive joinder in the OIA Opposition and its memorandum in opposition ("DOE Opposition") on August 30, 2019.[1] [Dkt. nos. 102, 104.] Plaintiffs filed their reply on September 6, 2019. [Dkt.

---

[1] The DOE and the OIA are referred to collectively as "Defendants."

no. 108.]  This matter came on for hearing on September 19, 2019.  On September 26, 2019, the DOE and Plaintiffs filed their respective supplemental memoranda.  [Dkt. nos. 114, 117.]  On October 3, 2019, the DOE, Plaintiffs, and the OIA filed responses to the supplemental memoranda.  [Dkt. nos. 120, 121, 122.]  For the reasons stated below, the Motion is denied.

## BACKGROUND

The operative pleading at this time is the September 26, 2019 Second Amended Complaint for Declaratory and Injunctive Relief ("Second Amended Complaint").[2]  [Dkt. no. 116.] Plaintiff A.B. is a seventeen year-old, twelfth-grade student at James Campbell High School ("Campbell"), who is a member of the Campbell girls' varsity water polo and swimming teams. Plaintiff A.M.B. is a fourteen year-old, ninth-grade student at Campbell, who is a member of the Campbell girls' varsity water polo team.  Plaintiff T.T. is also a seventeen year-old, twelfth-grade student at Campbell, who is a member of the

_____

[2] The Motion was filed before the First Amended Complaint for Declaratory and Injunctive Relief ("First Amended Complaint"), [filed 6/20/19 (dkt. no. 88),] and the Second Amended Complaint.  Because the differences between the Complaint for Declaratory and Injunctive Relief ("Complaint"), First Amended Complaint, and Second Amended Complaint do not affect class certification, this Court construes the Motion as addressing the Second Amended Complaint.  Therefore, "Plaintiffs" includes Plaintiffs A.M.B., by her parents and next friends, C.B. and D.B.; and A.P., by her parents and next friends, C.P. and M.P.

Campbell girls' varsity water polo and swimming teams.

Plaintiff.  Plaintiff A.P. is a sixteen year-old, eleventh-grade student at Campbell, who is a member of the girls' varsity soccer and water polo teams.  [Id. at ¶¶ 11-14.]

According to the Second Amended Complaint, the DOE is a state administrative agency that manages 292 public schools within the State of Hawai`i, including Campbell, which is a four-year high school.  Plaintiffs allege the DOE receives federal financial assistance and is subject to the anti-discrimination provisions of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq.  [Id. at ¶ 15.]  The OIA "is an unincorporated athletic association composed of all of the DOE's secondary schools on the island of Oahu," including Campbell.  [Id. at ¶ 16.]  Plaintiffs allege both that the OIA is an "instrumentality of, and is controlled by, the DOE," and that the DOE and the OIA are "pervasively entwined" because "[t]he OIA's Executive Director is a DOE employee, and all five regular members of the OIA's Executive Council are principals of DOE high schools."  [Id. at ¶¶ 16-17.]  Because of the OIA's connections with the DOE, Plaintiffs allege it receives federal financial assistance, and is therefore subject to the anti-discrimination provisions of Title IX.  [Id. at ¶ 18.]

Campbell is the largest high school in the DOE by population. In the 2017-18 school year, of the 3,123 students, 1,506 were female. [Id. at ¶ 51.] Plaintiffs allege: female athletes at Campbell suffer worse treatment, receive fewer benefits, and have fewer opportunities than male athletes; and the OIA's policies and practices control and/or greatly influence this disparate treatment. [Id. at ¶¶ 52-53.] With regard to the DOE, Plaintiffs allege sex-based discrimination in its administration of:

> (i) athletic locker rooms,[3] practice facilities, and competitive facilities; (ii) equipment and supplies; (iii) scheduling of games and practice times; (iv) availability and quality of coaching; (v) travel opportunities; (vi) medical and training services and facilities; and (vii) publicity and promotion.

[Id. at ¶ 57.] With regard to the OIA, Plaintiffs allege discrimination is evidenced by its treatment of the girls' teams with respect to: "(i) competitive facilities; (ii) scheduling of games; (iv) [sic] travel opportunties; and (iv) publicity and promotion." [Id. at ¶ 58.]

Plaintiffs allege they have submitted numerous complaints to the DOE regarding unfair treatment, and have made

---

[3] According to the Second Amended Complaint, an "athletic locker room" refers to a school's stand-alone athletic locker room facility that is usually located near the school's outdoor sports facilities, such as track and field, cross-country, football, baseball, and soccer fields. [Second Amended Complaint at ¶ 59 n.16.]

written and oral requests to obtain equal accommodation and/or to engage in discussions with the DOE regarding the same. [Id. at ¶¶ 158-59.] In response, the DOE and Campbell administrators have allegedly retaliated against Plaintiffs by, *inter alia*, threatening to cancel the Campbell girls' water polo season, eliminate the team, or both; and increasing administrative burdens on the water polo team, such as forcing the team to resubmit program paperwork after a particularly heated meeting between the water polo athletes, their parents, and Campbell administrators. [Id. at ¶ 161-62.]

Plaintiffs have alleged the following claims: 1) a violation of Title IX against Defendants based on their failure to take remedial actions to meet the anti-discrimination provisions under Title IX, and their continued unequal treatment of female athletes at Campbell ("Count I"); 2) a violation of Title IX against Defendants based on their failure to provide Campbell female athletes with equivalent athletic participation opportunities ("Count II"); and 3) a violation of Title IX against the DOE based on the DOE's retaliation for Plaintiffs' attempts to report and/or discuss the DOE's practice of sex discrimination ("Count III").

The Motion proposes the following class of plaintiffs: "All present and future James Campbell High School ('Campbell') female students and potential students who participate, seek to

participate, and/or were deterred from participating in athletics at Campbell." [Motion at 1.]  Plaintiffs assert the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a), (b)(1)(B) and (b)(2).  Plaintiffs ask this Court to certify them as class representatives.  Plaintiffs also move to have their counsel appointed as class counsel under Rule 23(g).

## STANDARD

Fed. R. Civ. P. 23 states, in pertinent part:

(a)  Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)  the class is so numerous that joinder of all members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

The Rule 23(a) requirements are known as: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."  Parsons v. Ryan, 754 F.3d 657, 674 (9th Cir. 2014).

"Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Id. (some citations and internal quotation

6

marks omitted) (quoting <u>Wal–Mart Stores, Inc. v. Dukes</u>, --- U.S.

---, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)).  The

class action is "an exception to the usual rule that litigation

is conducted by and on behalf of the individual named parties

only."  <u>Wal-Mart</u>, 564 U.S. at 348 (citation and quotation marks

omitted).  The Ninth Circuit has stated:

> In evaluating whether a party has met the
> requirements of Rule 23, we recognize that
> "Rule 23 does not set forth a mere pleading
> standard." <u>Wal–Mart</u>, 131 S. Ct. at 2551.  We
> therefore require a party seeking class
> certification to "affirmatively demonstrate his
> compliance with the Rule — that is, he must be
> prepared to prove that there are **in fact**
> sufficiently numerous parties, common questions
> of law or fact, etc." <u>Id.</u>  Similarly a party
> must affirmatively prove that he complies with
> one of the three subsections of Rule 23(b).

<u>Parsons</u>, 754 F.3d at 674 (emphasis in <u>Parsons</u>).

## DISCUSSION

## I.   <u>Mootness and Standing</u>

### A.   <u>Mootness</u>

As a threshold matter, Defendants argue Plaintiffs

A.B. and T.T.'s claims are unsustainable as moot.[4]  [OIA Opp. at

---

[4] Defendants argue Plaintiffs do not have standing to bring
their claims.  <u>See</u> OIA Opp. at 9-14; DOE Opp. at 2; 9/19/19 hrg.
trans., filed 10/7/19 (dkt. no. 124), at 9-13, 15-17.  However,
the substance of Defendants' arguments purportedly addressing
standing actually address mootness, or another Rule 23
requirement, such as adequate representation.  <u>See, e.g.</u>, OIA
Opp. at 11 (arguing "Plaintiffs A.B. and T.T. lack standing"
because they had both graduated from Campbell and therefore did
(. . . continued)

11; DOE Opp. at 2.] Defendants argue that, because A.B. and T.T. have graduated from Campbell since filing the Motion, they no longer qualify as members of the proposed class, and therefore cannot pursue their claims. [OIA Opp. at 11.] It is true that, if "the plaintiff's claim becomes moot before the district court certifies the class, the class action normally also becomes moot." Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1048 (9th Cir. 2014). However, under the "inherently transitory" exception to mootness, a court may "avoid[] the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved." Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1090 (9th Cir. 2011). "'Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" Id. (brackets omitted) (quoting Cty. of Riverside v. McLaughlin, 500 U.S. 44, 52, 111 S. Ct. 1661 (1991)). An inherently transitory claim is one in which a trial court will not have enough time to rule before the expiration of the representative's interest, yet "will certainly repeat as to the class, either because '[t]he individual could

_____

not qualify as members of the proposed class). Therefore, the Court has construed certain arguments addressing standing to be arguments that A.B. and T.T. cannot pursue their claims due to mootness in light of their graduation from Campbell.

nonetheless suffer repeated [harm]' or because 'it is certain that other persons similarly situated' will have the same complaint." Id. (alterations in Pitts) (quoting Gerstein v. Pugh, 420 U.S. 103, 110 n.11, 95 S. Ct. 854 (1975)).

Given the necessarily finite duration of a high school student's time as a student-athlete, and the potential for repetition of the claims from similarly situated students, under the particular circumstances of this case, these claims are inherently transitory. Furthermore, "[t]here is nothing to be gained by denying class certification only for class members to file a new lawsuit to be included in this litigation." In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., 311 F.R.D. 532, 539 (N.D. Cal. 2015). Therefore, the inherently transitory exception to mootness applies to the Plaintiffs who have already graduated from Campbell. Plaintiffs who have not yet graduated have also been to the Second Amended Complaint. Defendants' arguments as to mootness are therefore denied.

B.   **Standing**

The OIA objects to class certification on the grounds that Plaintiff A.M.B, a fourteen year-old, ninth grade water polo player, does not have standing because water polo season had not yet begun at the time the Motion was filed. The OIA, joined by the DOE, argue A.M.B.'s injuries are dissimilar from

the other named Plaintiffs in that, because A.M.B.'s inaugural

year as a student-athlete at Campbell had not yet begun, she had

not experienced the operative alleged discriminatory conduct.

The OIA argues further that her injuries were, at the time the

Motion was filed, hypothetical, and because A.M.B had not yet

experienced the injury alleged herself, she is not a member of

the proposed class, and therefore lacks standing to represent

the proposed class.

The principles of standing are well established.  The

United States Supreme Court has held:

> It is axiomatic that the judicial power
> conferred by Art. III may not be exercised unless
> the plaintiff shows "that he personally has
> suffered some actual or threatened injury as a
> result of the putatively illegal conduct of the
> defendant."  Gladstone, Realtors v. Village of
> Bellwood, 441 U.S. 91, 99 (1979).  It is not
> enough that the conduct of which the plaintiff
> complains will injure **someone**.  The complaining
> party must also show that he is within the class
> of persons who will be concretely affected.  Nor
> does a plaintiff who has been subject to
> injurious conduct of one kind possess by virtue
> of that injury the necessary stake in litigating
> conduct of another kind, although similar, to
> which he has not been subject.  See Moose Lodge
> No. 107 v. Irvis, 407 U.S. 163, 166-167 (1972).

Blum v. Yaretsky, 457 U.S. 991, 999 (1982) (emphasis in

original).  This principle still applies when the case is

brought as a putative class action.  Lewis v. Casey, 518 U.S.

343, 357 (1996).  "[E]ven named plaintiffs who represent a class

must allege and show that they personally have been injured, not

that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Id. (citations and internal quotation marks omitted); see also Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging constitutional claims that the named plaintiff does not have standing to raise." (citing O'Shea v. Littleton, 414 U.S. 488, 493-94, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974))).

Defendants focus on the water-polo and locker room access allegations in arguing against A.M.B. as a class representative on the basis of standing. See OIA Opp. at 12 (arguing Campbell did not have a pool for boys or girls to compete in, and that Campbell cured locker room disparity before A.M.B. was officially a student-athlete). However, Plaintiffs' allegations of discrimination go far beyond the pool and locker room. Plaintiffs allege a lack of locker room and pool access as only part of their evidence supporting their three causes of action.

This district court has utilized a three-part test in determining whether a plaintiff has standing.

> In order to establish standing, three
> requirements must be met:
>
>> First and foremost, there must be alleged
>> (and ultimately proved) an injury in fact –
>> a harm suffered by the plaintiff that is
>> concrete and actual or imminent, not

conjectural or hypothetical.  Second, there
must be causation – a fairly traceable
connection between the plaintiff's injury
and the complained-of conduct of the
defendant.  And third, there must be
redressability – a likelihood that the
requested relief will redress the alleged
injury.  This triad of injury in fact,
causation, and redressability constitutes
the core of Article III's case-or-
controversy requirement, and the party
invoking federal jurisdiction bears the
burden of establishing its existence.

[Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 103-04, (1998)] (internal citations and
quotation marks omitted).  See Takhar v. Kessler,
76 F.3d 995, 1000 (9th Cir. 1996) ("A plaintiff
has the burden of establishing the elements
required for standing.").

Iinuma v. Bank of Am., N.A., Civil No. 14-00295 DKW-KSC, 2014 WL

5361315, at *2 (D. Hawai`i Oct. 20, 2014).

Therefore, Defendants' focus on whether A.M.B. was

subjected to pool and locker room discrimination is an

erroneously narrow interpretation of standing.  The alleged

injury is that of discrimination on the basis of sex, and

Plaintiffs contend there are multiple instances of such

discrimination.  Here, A.M.B. was allegedly subjected to at

least some of the instances of alleged discrimination.

Specifically, A.M.B. allegedly experienced discriminatory events

generally suffered by the female-student athlete population,

which would apply even if a particular student's athletic season

had not started at the time the Motion was filed.  See Second

Amended Complaint at ¶ 102-11(unequal scheduling of practices and games between boys' teams and girls' teams); id. ¶ 141 (unequal publicity and promotion between boys' teams and girls' teams).  Student-athletes who are forced to make plans around a discriminatory sports schedule, or exposed to a lack of publicity for female athletics programs, are subjected to the type of harm Title IX was implemented to prevent and remedy. See, e.g., Ollier v. Sweetwater Union High Sch. Dist., 858 F. Supp. 2d 1093, 1111-12 (S.D. Cal. 2012) (finding that disparities in scheduling and publicity were not negligible), enforced, Civil No. 07CV714-L (JMA), 2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), and aff'd, 768 F.3d 843 (9th Cir. 2014). Therefore, for the purpose of the instant Motion: A.M.B. has standing; the alleged injury was caused by Defendants; and the requested relief is likely to redress the alleged injury. Therefore, Defendants' argument that A.M.B. lacks standing is denied as to Counts I and II.  As Plaintiffs have not satisfied Rule 23(a), see infra, it is unnecessary for the Court to reach the issue of whether A.M.B. has standing to bring Count III.

## II.  **Rule 23 Requirements**

### A.  **Numerosity**

The numerosity analysis is applicable to Counts I, II and III.  A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).  "Joinder

13

need not be impossible, as long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." Rannis v. Recchia, 380 F. App'x 646, 650–51 (9th Cir. 2010) (citing Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964)). This Court has described the general principles governing the numerosity analysis as follows:

> The numerosity inquiry "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). Courts, however, have found the numerosity requirement to be satisfied when a class includes at least 40 members. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members") (citation omitted); In re Nat'l W. Life Ins. Deferred Annuities Litig., 268 F.R.D. 652, 660 (S.D. Cal. 2010) (noting that "[c]ourts have found joinder impracticable in cases involving as few as forty class members") (citations omitted); E.E.O.C. v. Kovacevich "5" Farms, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007) (noting that "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members"); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (noting that "[a]s a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough").

Brown v. Porter McGuire Kiakona & Chow, LLP, CIVIL 17-00554 LEK-KSC, 2019 WL 254658, at *9 (D. Hawai`i Jan. 17, 2019) (alterations in Brown) (some citations omitted).  However,

numerosity has been found lacking in a proposed class with over 300 members.  See Minersville Coal Co. v. Anthracite Export Ass'n, 55 F.R.D. 426, 428 (M.D. Pa. 1971).

The analysis to determine the practicality of joinder is multifactored.

> Joinder of a small group may prove impracticable, while joinder of a large group may be more possible. Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172, 106 S. Ct. 2896, 90 L. Ed. 2d 983 (1986).  Joinder is generally considered more practicable when all members of the class are from the same geographic area.  Andrews, 780 F.2d at 132 (citing Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981); Dale [Elecs., Inc. v. R.C.L. Elecs., Inc.], 53 F.R.D. [531,] 534 [(D.N.H. 1971)]).  Where class members may be easily identified, joinder is also more practicable.  Id. (citing Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S. Ct. 923, 66 L. Ed. 2d 842 (1981)).

Hum v. Dericks, 162 F.R.D. 628, 634 (D. Hawai`i 1995).

Plaintiffs argue the numerosity requirement of Rule 23(a) is met because the proposed class is so numerous, based on the number[5] of female student-athletes alone, that joinder is impracticable.  [Mem. in Supp. of Motion at 26-27.] Plaintiffs further argue that numerosity is satisfied because

---

[5] Plaintiffs allege there were 366 Campbell female student-athletes in the 2018-19 school year, as calculated by Plaintiffs' counsel from information received from DOE in discovery.  [Pltfs.' Suppl. Mem., Decl. of Kim Turner ("Turner Decl.") at ¶¶ 13-14, Exh. G (Participation Data calculated by Pltf.'s counsel) at 3.]

the future members of the proposed class are necessarily

unidentifiable, which renders joinder impracticable. [Id. at

27.]

Nonetheless, although the number of members in the proposed

class may exceed 300, Plaintiffs have not demonstrated that

joinder would be impracticable.  The proposed class members are

limited to the female student population from a single high

school.  The proposed class members are geographically tied to

one area of Hawai`i, and identifiable through school and

athletic records.  See Hum, 162 F.R.D. at 634 ("Because most of

the proposed class members reside in Hawai`i and are

identifiable through [the defendant's] records, the court finds

that [the plaintiff] has not carried his burden of showing that

joinder is impracticable.").  Plaintiffs have not demonstrated

why joinder here is impracticable as to current students.

        Although future and potential students are listed

separately in the class description, both subgroups are subject

to the same fatal flaw, neither is reasonably identifiable.

This Court has stated:

                A class must meet a minimum level of
                identifiability and definiteness.  See Rhodes [v.
                Cracker Barrel Old Country Store, Inc.,],  213
                F.R.D. [619,] 674 [(N.D. Ga. 2003)] ("Although
                [i]t is not necessary that the members of the
                class be so clearly identified that any member
                can be presently ascertained, . . . [Plaintiffs]
                must establish that there exists a legally
                definable class that can be ascertained through

16

reasonable effort." (citation and quotation marks omitted) (alterations in original)). Thus, a court should only consider potential future class members if the court can make a reasonable approximation of their number. <u>See</u> <u>Bethesda Lutheran Homes & Servs., Inc. v. Leean</u>, 165 F.R.D. 87, 88 (W.D. Wisc. 1996); <u>Dudo v. Schaffer</u>, 82 F.R.D. 695, 699 (E.D. Penn. 1979).

<u>R.G. v. Koller</u>, No. 05-00566 JMSLEK, 2006 WL 897578, at *5 (D. Hawai`i Mar. 16, 2006) (some alterations in original). The Court is currently unable to make a reasonable approximation of the future and potential class members. Therefore, future and potential class members will not be considered in making a numerosity determination under Rule 23(a). Plaintiffs have shown no sound reason why joinder is impracticable and therefore have not demonstrated satisfaction of the Rule 23(a) numerosity requirement.

 **B.**  **Commonality and Typicality**

  This district court has stated:

> "Commonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010). Typicality is satisfied where the representative parties' claims and class members' claims arise "from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1124 (9th Cir. 2010); Fed. R. Civ. P. 23(a). The Ninth Circuit has noted that the "commonality and typicality requirements of FRCP 23(a) tend to merge." <u>Meyer v. Portfolio</u>

<u>Recovery Assocs., LLC</u>, 707 F.3d 1036, 1041 (9th Cir. 2012).

<u>J.E. v. Wong</u>, CIV. NO. 14-00399 HG-BMK, 2016 WL 1060834, at *2 (D. Hawai`i Mar. 17, 2016).

The Supreme Court has held commonality is "the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" <u>Wal-Mart</u>, 564 U.S. at 349 (quoting Rule 23(a)(2)). It is not enough that all members of the proposed class claim the same type of injury, rather, their claims must depend on a common contention. <u>Id.</u> at 349-50. The common contention "must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u> at 350. Factual divergence among members of the proposed class to a sufficient degree can preclude a finding of commonality because "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." <u>Id.</u> (citation and quotation marks omitted).

Here, Plaintiffs offer two questions to demonstrate they have satisfied the Rule 23(a) commonality requirement: "(1) whether Defendants unlawfully discriminate against current and future female athletes by failing to provide them with equal opportunities, treatment, and benefits, and (2) whether they

have been retaliated against for raising their concerns." [Mem. in Supp. of Motion at 29.]

For purposes of the instant Motion, proof of commonality overlaps with Plaintiffs' substantive contention that Defendants engaged in discriminatory behavior. Therefore, a commonality determination requires identification of the allegations of misconduct and review of the allegations in light of the commonality standard. In support of an affirmative response to their first question, Plaintiffs allege: 1) female student-athletes did not have access to the only athletic locker room until the month the instant action was filed; 2) a lack of pool access for the water polo team, and inadequate quality of the pool; 3) a softball facility inferior in quality to the baseball facility; 4) more difficulty getting lights at the softball facility fixed compared to the football facility; 5) the fact that the weight room is predominantly filled with male athletes every fall; 6) displacement of female water polo players in the weight room by male football players; 7) the use of Aloha Stadium for boys' championship games but not for girls' championship games; 8) less equipment funding for girls' teams than boys' teams; 9) the scheduling of games and practices on more desirable days for boys' teams than girls' teams; 10) that Campbell did not secure a coach for the girls' water polo team as timely as coaches are secured for boys' teams, and gave

funding from water polo to football to support the boys'
coaches; 11) a lack of knowledgeable medical staff at water polo
games; 12) travel opportunities given to boys' teams but not
girls' teams; 13) all publicity photos on the school website
related to athletics are of the football team, with no photos of
any female student-athletes; 14) that cheerleading and band only
perform at football games and related events and no girls'
sports events; 15) Campbell's athletic director only attended
one water polo game and disparaged the team thereafter for
losing; and 16) at an athletic award ceremony, and again at a
pep rally, Campbell did not mention the water polo team when
discussing Campbell athletics.  [Mem. in Supp. of Motion at 12-
23.]

        Plaintiffs assert they have answered the litigation-
driving "why was I disfavored" question posed by Wal-Mart with
the response, they were disfavored because of their gender.  See
564 U.S. at 352 (emphasis omitted).  Although the individual
members of the proposed class offer less than identical facts to
support this assertion, the commonality requirement does not
demand that every question of law or fact be common to every
member of the proposed class.  See Jimenez v. Allstate Ins. Co.,
765 F.3d 1161, 1165 (9th Cir. 2014) ("These common questions may
center on shared legal issues with divergent factual predicates
or a common core of salient facts coupled with disparate legal

remedies." (brackets, citation, and internal quotation marks

omitted)).  Plaintiff's allegations numbers 1, 3, 4, 6, 7, 8, 9,

12, and 13 present, without a determination on the merits,

evidence of at least one question of law or fact common among

the proposed class, readily identifiable as an allegation of

discrimination on the basis of sex.  No determination has been

made with respect to the other allegations.  Therefore, with

regard to their first question of commonality, Plaintiffs have

successfully identified a legal issue connecting the proposed

class members, unequal treatment suffered on the basis of sex,

as substantially related to the resolution of the litigation.

See, e.g., Yslava v. Hughes Aircraft Co., 845 F. Supp. 705, 712-

13 (D. Ariz. 1993) (finding commonality notwithstanding certain

factual variations).

On the question of typicality, this district court has

stated:

> Rule 23(a)(3) permits certification only if
> "the claims or defenses of the representative
> parties are typical of the claims or defenses of
> the class." Fed. R. Civ. P. 23(a)(3).  "The
> purpose of the typicality requirement is to
> assure that the interest of the named
> representative aligns with the interests of the
> class." Hanon [v. Dataproducts Corp.], 976 F.2d
> [497,] 508 [(9th Cir. 1992)] (citation omitted).
> Typicality exists "if [representative claims] are
> reasonably coextensive with those of absent class
> members; they need not be substantially
> identical." Hanlon v. Chrysler Corp., 150 F.3d
> 1011, 1020 (9th Cir. 1998), *overruled on other*
> *grounds by* Wal-Mart Stores, Inc. v. Dukes, 564

> U.S. 338 (2011).  Thus, "[s]ome degree of
> individuality is to be expected in all cases, but
> that specificity does not necessarily defeat
> typicality."  <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d
> 1168, 1184 (9th Cir. 2007), *overruled on other
> grounds by* <u>Wal-Mart Stores, Inc.</u>, 564 U.S. 338.
> With these principles in mind, "[t]he test of
> typicality is whether other members have the same
> or similar injury, whether the action is based on
> conduct which is not unique to the named
> plaintiffs, and whether other class members have
> been injured by the same course of conduct."
> <u>Hanon</u>, 976 F.2d at 508 (citation and quotation
> marks omitted).

<u>Smith v. Bank of Haw.</u>, No. CV 16-00513 JMS-WRP, 2019 WL 2712262,

at *2 (D. Hawai`i June 28, 2019) (some alterations in <u>Smith</u>),

*permission to appeal denied*, No. 19-80085, 2019 WL 5190924 (9th

Cir. Sept. 17, 2019).

On the issue of typicality, with respect to Counts I

and II, Plaintiffs have identified an injury, based on the

Defendants' actions, which is not unique to the named

Plaintiffs.  Unequal access, treatment, and benefits of athletic

programs is a common injury among the named Plaintiffs and

proposed class, therefore satisfying typicality.

However, as to the second question, whether the

proposed class was retaliated against as alleged in Count III,

Plaintiffs' evidence falls short.  The question of retaliation

in the instant case also exemplifies an instance where the

commonality and typicality requirements merge.  The evidence

presented by Plaintiffs in support of the claim that all

current, future, and potential female student-athletes have experienced retaliation arise from a dispute between Defendants, specifically limited to Campbell administrators, and the water polo team and their parents.  <u>See</u> Mem. in Supp. of Motion at 23-25.  Plaintiffs do not allege any instances of retaliation against any athletes other than members of the water polo team.  The claim of retaliation does not arise from a fact pattern typical of the absent class members, that is, there are no questions of law or fact common among the proposed class.  Also, the conduct complained is not typical of the proposed class; it is unique to the named Plaintiffs.  Therefore, retaliation, as alleged, cannot be found to extend to all current, future, and potential female student-athletes at Campbell.  Plaintiffs have not satisfied the Rule 23(a) commonality and typicality requirements with respect to Count III.

## C.  **<u>Adequacy</u>**

The Ninth Circuit has stated:

> "The adequacy [of representation] inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem [Prods., Inc. v. Windsor]</u>, 521 U.S. [591,] 625, 117 S. Ct. 2231 [(1997)].  Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process.  <u>See</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43, 61 S. Ct. 115, 85 L. Ed. 22 (1940)).

The initial inquiry in assessing adequacy of
representation, then, is whether "the named
plaintiffs and their counsel have any conflicts
of interest with other class members." Id. at
1020. That general standard must be broken down
for specific application; conflicts within
classes come in many guises. For example, two
subgroups may have differing, even adversarial,
interests in the allocation of limited settlement
funds. See Amchem, 521 U.S. at 626, 117 S. Ct.
2231. Class members with higher-value claims may
have interests in protecting those claims from
class members with much weaker ones, see Ortiz v.
Fibreboard Corp., 527 U.S. 815, 857, 119 S. Ct.
2295, 144 L. Ed. 2d 715 (1999), or from being
compromised by a class representative with lesser
injuries who may settle more valuable claims
cheaply, see Molski v. Gleich, 318 F.3d 937, 955
(9th Cir. 2003), *overruled en banc on other
grounds by* Dukes v. Wal-Mart Stores, Inc., 603
F.3d 571 (9th Cir. 2010), *rev'd*, 564 U.S. 338,
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). . . .

In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.
Liab. Litig., 895 F.3d 597, 607-08 (9th Cir. 2018) (some

alterations in Volkswagen) (footnotes omitted), *cert. denied sub*

*nom.*, Fleshman v. Volkswagen, AG, 139 S. Ct. 2645 (2019).

The OIA argues the named Plaintiffs are inadequate

representatives of the proposed class because there is an

inherent conflict between the groups that play different sports

within the class, and the named Plaintiffs, all of whom only

participate in swimming and water polo.[6] [OIA Opp. at 16.] The

---

[6] The OIA's Opposition was filed before A.P. was added as a
plaintiff. The OIA's objection has been construed as an
argument the named Plaintiff's are predominantly water polo
players.

24

OIA argues that, faced with limited resources, the interests of one group within the proposed class could be antagonistic to another group. See id. This argument has been presented to, and rejected by, other courts facing questions of speculative conflict. See Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) ("Furthermore, this circuit does not favor denial of class certification on the basis of speculative conflicts." (citations omitted)); see also Portz v. St. Cloud State Univ., 297 F. Supp. 3d 929, 947 (D. Minn. 2018) (finding that a speculative conflict, unsupported by evidence, did not give rise to inadequate representation). The argument has been found to be particularly unpersuasive when the named plaintiffs affirm their commitment to representing the whole class. See Foltz v. Delaware State Univ., 269 F.R.D. 419, 424-25 (D. Del. 2010) (disregarding speculative conflict, especially in light of the testimony of several named plaintiffs "that they are motivated to obtain equal opportunities for all female students" at the institution).

The OIA's argument here is that of a similarly speculative, potential conflict. Therefore, it does not give rise to a finding of inadequate representation. See Swanson v. Univ. of Haw. Prof'l Assembly, 212 F.R.D. 574, 577 (D. Hawai`i 2003) (ruling that a hypothetical conflict was not relevant in deciding adequacy of representation). A finding of adequate

representation is additionally supported by the declarations of several named Plaintiffs that they are motivated to obtain equal opportunities for female students at Campbell.  <u>See, e.g.</u>, Motion, decl. of A.B. at ¶ 5 ("I wanted to do something to stand up not only for my teammates, but also for all girls at Campbell who have been mistreated for so long."); decl. of T.T. at ¶ 44 ("I am part of this lawsuit because I want things to change for girls.").  No challenges to the adequacy of Plaintiffs' counsel have been raised.  Therefore, the adequacy requirement of Rule 23(a) is satisfied.

D.    **<u>Summary</u>**

The proposed class cannot be certified because it fails to meet the numerosity requirement and, as to Count III, the commonality and typicality requirements.  Because the proposed class does not meet the Rule 23(a) requirements, it is not necessary to address the Rule 23(b) requirements.

<u>CONCLUSION</u>

On the basis of the foregoing, Plaintiffs' Motion to Certify Class, filed May 3, 2019, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, December 31, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**A.B., ET AL. VS. HAWAI`I STATE DEPARTMENT OF EDUCATION, ET AL;
CV 18-00477 LEK-RT; ORDER DENYING PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**