## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement, including Exhibits A and B, (the "Agreement") is made and entered into by and between A.B. and A.M.B., by their parents and next friends, C.B. and D.B., T.T., by her parents and next friends, K.T. and S.T., and A.P., by her parents and next friends, C.P. and M.P., individually and on behalf of all those similarly situated, on the one hand (collectively "Plaintiffs"), and the Hawaii Department of Education ("DOE") and the Oahu Interscholastic Association ("OIA"), on the other hand (together "Defendants" and collectively the "Parties").

## RECITALS

**WHEREAS** Plaintiffs filed a Title IX action on December 6, 2018, in the U.S. District Court for the District of Hawai'i alleging unlawful sex discrimination suffered by Plaintiffs at James Campbell High School ("Campbell High School"), captioned *A.B., et al. v. Hawaii State Department of Education, et al.*, Case No. 1:18-cv-00477-LEK-RT ("the Action");

**WHEREAS** on September 26, 2019, Plaintiffs filed their Second Amended Complaint ("SAC");

**WHEREAS** on July 1, 2022, the District Court granted Plaintiffs' motion for class certification and certified the following class: "All present and future James Campbell High School ('Campbell') female students and potential students who participate, seek to participate, and/or are or were deterred from participating in athletics at Campbell (the 'Class')."

**WHEREAS** on July 31, 2023, August 1, 2023, and August 29, 2023, the Parties engaged in arms' length settlement negotiations during a multi-day mediation conducted by retired Judge Marie Milks, and have continued to negotiate the Agreement with Judge Milks' assistance;

**WHEREAS** the Parties have agreed to enter into a plan for ensuring that Campbell High School achieves and maintains compliance with Title IX (the "Compliance Plan," attached as Exhibit A and incorporated in this Agreement as if set forth herein);

**WHEREAS** the Parties have agreed to additional terms specific to the OIA, attached as Exhibit B and incorporated in this Agreement as if set forth herein;

**Exhibit 1**

**WHEREAS** the Parties further agreed to the terms outlined in this Agreement to resolve Plaintiffs' claims in this Action.  This Agreement represents significant benefits to the Class, and removes the risk, uncertainty and expense of further litigation.

**WHEREAS,** in order to avoid further risk, uncertainty, and expense of continued litigation, the Parties desire to reach a resolution of their differences amicably, together with any and all other differences that Plaintiffs may have or claim to have against Defendants in connection with and/or related to the allegations set forth in the SAC.

**NOW, THEREFORE,** in exchange for the mutual covenants and promises contained herein and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## SETTLEMENT TERMS

A.  **Selection of Independent Evaluator (IE).**  The Parties agree Defendants will retain Philip Catanzano to serve as Independent Evaluator ("IE") in this matter.  Defendants shall bear all costs associated with the IE.  Defendants will retain the IE within thirty (30) days of the Execution of this Agreement. If Mr. Catanzano is unable to serve as IE, the parties will mutually agree to another IE within thirty (30) days of Mr. Catanzano's notice that he is unable to serve as IE.

B.  **Execution of Agreement.**  The date of Execution of this Agreement shall be the date the last required signature is affixed to it.

C.  **Compliance and Monitoring Period and Court's Retention of Jurisdiction.**  This Agreement shall be in effect for seven (7) years from the date of Execution by the Parties (the "Compliance and Monitoring Period"). The Court shall retain exclusive and continuing jurisdiction over this Agreement for the purpose of enforcing any of its provisions and terms for the length of the Compliance and Monitoring Period and shall enter an order incorporating the terms of this Agreement.  The Court's retention of such jurisdiction shall be noted in any dismissal order regarding this Action. Defendants may move the Court to end monitoring before the Compliance and Monitoring Period expires, but shall not file such a motion any earlier than year five (5) of the Compliance and Monitoring Period unless the IE and the Parties agree that compliance has been reached earlier.  In any such

motion to end the Compliance and Monitoring Period early, Defendants shall demonstrate full compliance with the terms of this Agreement and shall include the IE's certification that they are in compliance with Title IX. Plaintiffs may move the Court to extend the period in the event Defendants are not in compliance by the end of year seven (7).

**D.**  **Notification to the Court.**  Within ten (10) days of the date of Execution of this Agreement, the Parties shall file a joint motion to stay the Action, pending a final determination by the Court concerning approval of the Agreement.

**E.**  **Attorneys' Fees and Costs.**  The Parties further agree to make a good faith effort to resolve Plaintiffs' claim for reasonable attorneys' fees and costs by first engaging in mediation with Judge Milks in October 2023, including prospective fees and costs associated with monitoring this Agreement.  If the Parties reach an impasse after good faith efforts to mediate the fees and costs with Judge Milks, the Parties agree that Plaintiffs' entitlement to reasonable fees and costs will be resolved by way of motion to be decided by the United States District Court for the District of Hawaii.

**F.**  **Dispute Resolution.**

**1.**  **Meet and Confer.** If any dispute arises between the Parties relating to this Agreement the Parties agree to initially attempt to resolve such dispute by meeting and conferring in good faith.  If a dispute arises, the aggrieved Party shall provide notice of the dispute to the other Party within thirty (30) calendar days of the discovery of the alleged grievance. Thereafter, the Parties shall meet and confer within fifteen (15) calendar days of receipt of notice of the grievance by the non-aggrieved Party.

**2.**  **Mediation.** If the Parties are unable to resolve a dispute relating to this Agreement, the Parties agree to submit such dispute to a one-day, non-binding mediation before Judge Milks within fifteen (15) calendar days of the first meet and confer.  If Judge Milks is not available, the Parties shall jointly select a single neutral mediator. If the Parties are unable to jointly agree to the selection of a mediator within the fifteen (15) calendar days, Dispute Prevention & Resolution ("DPR") shall administer the mediation and assign the mediator at random. The mediation shall commence within thirty (30)

calendar days of the selection of the mediator and occur within Honolulu unless both Parties agree to an alternative location. The administrative costs of conducting the mediation shall be shared equally between the Parties.

**G.**    **Joint Public Statement.**  Within thirty (30) days of the Execution of this Agreement, the Parties will exercise good faith and use best efforts to agree upon and issue a joint public statement regarding the Agreement, the Defendants' commitment to gender equity and the importance of the Plaintiffs' role, impact, and courage.  Nothing herein shall preclude the Parties from making additional statements regarding the Agreement.

**H.**    **Notices.**  Unless otherwise provided in this Agreement, all notices required to be given shall be in writing and sent by e-mail and first-class regular mail to the Parties.  Notice shall be deemed effective upon e-mail transmission.

If to Plaintiffs' counsel:

  Legal Aid at Work
  Attention: Elizabeth Kristen
  180 Montgomery Street, Suite 600
  San Francisco, CA 94104
  Ekristen@legalaidatwork.org

If to DOE's counsel:

  Kendall J. Moser, Esq.
  Department of the Attorney General
  State of Hawai'i
  425 Queen Street
  Honolulu, Hawai'i 96813
  Kendall.J.Moser@hawaii.gov

If to OIA's counsel:

  Hosoda Law Group, AAL, ALC
  Attention: Lyle S. Hosoda
  500 Ala Moana Boulevard, Suite 3-499
  Honolulu, Hawai'i 96813
  lsh@hosodalaw.com

If any of the Parties changes its business address or the person or persons to whom notices are to be directed, it shall notify the other Parties, in writing, of such change of address or designated representative.

**I.**   **Bankruptcy & Fiscal Soundness.**  Defendants represent that they cannot discharge any obligations under this Agreement or the Compliance Plan by declaring bankruptcy and further represent that they are fiscally sound and that they are not in jeopardy of being declared, or know of plans to declare, insolvency at any time within the next five (5) years.

**J.**   **Prevailing Party Fees.**  The prevailing party in any dispute related to the enforcement of this Agreement shall be entitled to reasonable attorneys' fees and costs related to the dispute.

**K.**   **Joint Motion for Preliminary Approval and Final Approval.**  The Parties will work collaboratively to prepare and submit to the court a joint motion for preliminary approval and final approval of this Agreement.  The Parties shall take all reasonable steps to advocate for approval of the terms of this Agreement.

**L.**   **Release.**  In consideration of the terms of this Agreement set forth herein, Plaintiffs hereby fully and finally release, acquit, and forever discharge the Defendants, their employees, representatives, members, agents, and insurers, from and against any and all claims which Plaintiffs have or could have brought based on the events giving rise to this Action, whether known or unknown at the date of Execution of this Agreement, through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Agreement.

**M.**   **No Release of Obligations Under Agreement.** Notwithstanding anything to the contrary in this Agreement, the releases and covenants contained in this Agreement do not release the Parties' rights and obligations under this Agreement, nor do they bar the Parties from enforcing or effectuating this Agreement.

**N.**   **No Admission of Liability.** The Parties acknowledge and agree that this Agreement shall not be construed or considered as an admission of the truth of any fact, event, circumstance, liability, or obligation that is not specifically contained in or covered by this Agreement.

**O.**   **No Representations.**  The Parties acknowledge that, except as expressly set

forth herein, no representation of any kind or character has been made to induce the execution of this Agreement.

**P.** **Governing Law.**  This Agreement shall be construed under and governed by the laws of the State of Hawai'i.

**Q.** **Successors.**  This Agreement shall be binding upon the Parties, their respective current and former predecessor and successor entities, affiliates, agents, trustees, subsidiaries, parents, governing boards, representatives, insurers, and assigns. This Agreement shall inure to the benefit of and be binding upon each of the Parties and, as the case may be, its respective agents, officers, directors, trustees, attorneys, governing boards, representatives, assigns, subsidiaries, parents, predecessors or successors.

**R.** **Miscellaneous.**

**1.** The language of all parts in this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

**2.** Should any provision in this Agreement be declared or determined to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement, and all remaining provisions shall remain valid and enforceable.

**3.** This Agreement, including Exhibits A and B, sets forth the entire agreement between the Parties and fully supersedes any and all prior and contemporaneous agreements and understandings between the Parties pertaining to the subject matter of this Agreement.

**4.** The headings used herein are for reference only and shall not affect the construction of this Agreement.

**5.** The use of the conjunctive ("and") shall include the subjunctive ("or"), and vice versa.  References to "each" shall include "all," and vice versa.  References to a plural entity shall include all of them collectively and each of them individually.

**6.** Neither this Agreement nor any provision hereof may be changed, waived, discharged, or terminated, save and except by an instrument

in writing signed by each of the Parties.

**S.** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Furthermore, signatures delivered via facsimile or e-mail or DocuSign (or similar service) shall have the same force, validity and effect as the originals thereof.

**Approved as to form by counsel**:

By: _Elizabeth Kristen_
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Elizabeth Kristen
Counsel for Plaintiffs

Date: 10/6/2023
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Lyle S. Hosoda
OAHU INTERSCHOLASTIC ASSOCIATION

Date: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

By: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Kendall J. Moser
HAWAII DEPARTMENT OF EDUCATION

Date: ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

//
//
//
//
//
//
//
//

**Approved as to form by counsel**:


By:   _____
      Elizabeth Kristen
      Counsel for Plaintiffs


Date: _____


By:   *Lyle S. Hosoda*_____
      Lyle S. Hosoda
      OAHU INTERSCHOLASTIC ASSOCIATION


Date: October 7, 2023_____


By:   _____
      Kendall J. Moser
      HAWAII DEPARTMENT OF EDUCATION


Date: _____


//
//
//
//
//
//
//
//

**Signed by the Parties:**


By:   _____
      Kendall J. Moser, Deputy Attorney General
      HAWAII DEPARTMENT OF EDUCATION


Date: _____

in writing signed by each of the Parties.

**S.**   **Counterparts.**   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Furthermore, signatures delivered via facsimile or e-mail or DocuSign (or similar service) shall have the same force, validity and effect as the originals thereof.

**Approved as to form by counsel**:

By: _____

Elizabeth Kristen
Counsel for Plaintiffs

Date: _____

By: _____

Lyle S. Hosoda
OAHU INTERSCHOLASTIC ASSOCIATION

Date: _____

By: _____

Kendall J. Moser
HAWAII DEPARTMENT OF EDUCATION

Date:  October 5, 2023

//
//
//
//
//
//
//
//

**Signed by the Parties:**

By: _Kendall J. Moser_ (signature)

Kendall J. Moser, Deputy Attorney General
HAWAII DEPARTMENT OF EDUCATION

Date: _October 5, 2023_

By: _____

Ray Fujino
OAHU INTERSCHOLASTIC ASSOCIATION

Date: _____

By: _____

Ashley Badis
Plaintiff

Date: _____

By: _____

Alexis Badis
Plaintiff

Date: _____

By: _____

Abby Pothier
Plaintiff

Date: _____

//
//
//

By:  _____
Ray Fujino
OAHU INTERSCHOLASTIC ASSOCIATION

Date:  _10/4/2023_____

By:  _____
Ashley Badis
Plaintiff

Date:  _____

By:  _____
Alexis Badis
Plaintiff

Date:  _____

By:  _____
Abby Pothier
Plaintiff

Date:  _____

//
//
//
By:  _____
TT
Plaintiff

Date:  _____

**Signed by the Parties:**

By: _____

    Kendall J. Moser, Deputy Attorney General
    HAWAII DEPARTMENT OF EDUCATION

Date: _____


By: _____

    Ray Fujino
    OAHU INTERSCHOLASTIC ASSOCIATION

Date: _____


By: _____

    Ashley Badis
    Plaintiff

Date: 10/6/2023
    _____


By: _____

    Alexis Badis
    Plaintiff

Date: _____


By: _____

    Abby Pothier
    Plaintiff

Date: _____

//
//
//

**Signed by the Parties:**

By: _____

    Kendall J. Moser, Deputy Attorney General
    HAWAII DEPARTMENT OF EDUCATION

Date: _____

By: _____

    Ray Fujino
    OAHU INTERSCHOLASTIC ASSOCIATION

Date: _____

By: _____

    Ashley Badis
    Plaintiff

Date: _____

By: _____

    Alexis Badis
    Plaintiff

Date: 10/6/2023 _____

By: _____

    Abby Pothier
    Plaintiff

Date: _____

//
//
//

**Signed by the Parties:**

By:    _____

Kendall J. Moser, Deputy Attorney General
HAWAII DEPARTMENT OF EDUCATION

Date: _____


By:    _____

Ray Fujino
OAHU INTERSCHOLASTIC ASSOCIATION

Date: _____


By:    _____

Ashley Badis
Plaintiff

Date: _____


By:    _____

Alexis Badis
Plaintiff

Date: _____


By:    _____

Abby Pothier
Plaintiff

Date: 10/6/2023  _____

//
//
//

By: _____

TT

Plaintiff

Date: 10/6/2023
_____

**Exhibit A:  Compliance Plan**
**James Campbell High School**

## I.    Approach

A.    The Independent Evaluator and Standards to be Used.

This is a Title IX Compliance Plan ("Plan") for James Campbell High School ("Campbell High School") and the State of Hawai'i, Department of Education ("DOE") and the Oahu Interscholastic Association ("OIA") as it affects Campbell High School. It is intended to assist, facilitate, and ensure Campbell High School's compliance with Title IX of the Education Amendments of 1972 ("Title IX"). To accomplish this, an Independent Evaluator ("IE") with substantial knowledge and experience in evaluating and bringing educational institutions into compliance with Title IX shall be retained to inspect, gather data, evaluate, report and make recommendations to ensure Campbell High School is in and maintains compliance with Title IX.

The IE shall be compensated by the DOE. The IE is neutral and independent. The IE's work shall be fair, neutral, and objective, free from any bias, prejudice, or influence. While the IE welcomes constructive criticism and suggestions as to additional areas to explore, the IE will not be directed or influenced by counsel for any party to reach or change a conclusion or any of the underlying data or information. The IE will follow the Title IX law, guidelines, and prior investigations conducted at the U.S. Department of Education Office for Civil Rights ("OCR").

The IE shall utilize and apply relevant Title IX law and guidance, including but not limited to the implementing regulations for Title IX found at 34 C.F.R. Part 106, OCR's 1979 *Title IX Policy Interpretation with regard to Intercollegiate Athletics*, its 1990 *Title IX Athletics Investigator's Manual*, its 1996 *Clarification of Intercollegiate Athletics Policy Guidance: Three-Part Test*, its 2003 *Dear Colleague Letter: Further Clarification of Intercollegiate Athletics Policy Guidance Regarding Title IX Compliance*, its 2008 *Dear Colleague Letter: Athletic Activities Counted for Title IX Compliance*, its 2010 *Dear Colleague Letter: Intercollegiate Athletics Policy Clarification: The Three-Part Test – Part Three*, and its 2013 *Dear Colleague Letter: Students with Disabilities in Extracurricular Athletics*, as well as updated OCR resolution agreements and other related materials. The IE will also monitor Ninth Circuit precedent, as well as other federal cases related to Title IX and gender equity. Both the Plaintiffs and Defendants DOE and the OIA (collectively "Defendants") are invited to share relevant cases and reference materials on an ongoing basis for consideration by the IE.

B.    Methodology and Approach

1.    Document Collection & Organizational Tool Building

The IE shall promptly set up and implement a data collection procedure, and collect all requested data related to each of the relevant categories listed in Section II of this Plan. There are typically several data requests for each component, *e.g.*, final rosters from the previous year, squad lists for upcoming years, a review of relevant non-discrimination policies and processes to start sports, equipment lists by team, schedules and anticipated travel (including means of travel and related amenities like hotels if relevant), staffing for each coaching position by team, related

details about coaching salaries and amenities, academic support for athletes, facility surveys to be utilized by local staff, medical and training resources, publicity and marketing resources and anticipated expenditures, and a range of other materials. This list will be attached to the Interim Report and Annual Report, along with annotations related to any data issues or timing issues. The data collected regarding fall and winter sports participation rates also will be available to Plaintiffs' counsel as an Interim Report following the end of winter sports at Campbell High School.

The IE will communicate with Campbell High School and OIA staff prior to circulating the data request to understand what data they already collect, how they collect such data, and how it would be helpful to collect such data moving forward. The Annual Report will be modeled after OCR Resolution Letters[1] and will include qualitative and quantitative assessments of the Title IX athletic participation and treatment and benefits elements. The IE will seek to collect information consistent with the "templates" drafted and utilized by Plaintiffs' expert Donna Lopiano, Ph.D. ("Dr. Lopiano") in her May 17, 2023 expert report ("Lopiano Report"), Appendices L-CC. The Annual Report for this review will incorporate substantive feedback organized by component for the entire program and include every element of the component, as described and exemplified by OCR. The IE shall consider Dr. Lopiano's analysis and input and they will be considered as data points. The IE will also be open to feedback from all Parties for subsequent reports.

The Interim Reports shall include fall and winter sports team rosters, and other component-related data that will be sought in the IE's data request. The IE will provide that data in a shared data file to be agreed upon by the Parties, (e.g., Box, Dropbox, SharePoint, or similar storage service). Any storage service chosen should be available to all, and the IE will maintain administrator rights to ensure documents are not altered or removed without permission. The IE will make this data and analysis available at regular intervals, *e.g.*, the last Friday in January and July, respectively.

  2. <u>Prong Three Efforts</u>

At the same time as the data request process in <u>Section I.A</u> develops, the IE will begin discussions with Campbell High School and OIA staff regarding their efforts to assess girls' interest in playing sports in greater numbers. The IE will assist Campbell High School and the OIA to develop and execute an appropriate survey for Campbell High School and relevant middle school students, begin conversations with local staff and local league officials, as well as other individuals familiar with local sports (including club sports) to begin assessing and responding to girls' interest as Title IX's Prong Three element requires. The IE will use as his guide the OCR's April 20, 2010 *Dear Colleague Letter Regarding the Three-Part Test* and its discussion of multiple indicators to assess interest. The IE will also utilize the sample survey provided in <u>Appendix J</u> of the Lopiano Report, but the IE reserves the right to tailor the survey to Campbell High School and Hawaii athletics.

The survey results will be shared with the Parties by or before January 31, 2024. After

_____

[1] *See, e.g.,* OCR letter to Rutgers University, 02-08-6001 (2015).

the survey results are shared, counsel for the Parties shall promptly meet to discuss a plan to implement additional athletic opportunities for girls at Campbell High School Such a meeting may include Campbell High School and/or OIA staff or the IE may meet separately with Campbell High School and/or OIA staff.  The final survey and results will also be appended to the Annual Report and will include response rates, data trends, and other relevant factors that OCR would consider in assessing a survey. The IE will conduct this survey and assessment of girls' interest on an annual basis. A discussion of all parts of Title IX's three-part test will also be included in the Annual Report.

3.     Coach Surveys and Interviews

In the fall-winter, the IE will conduct surveys and interviews of the head coaches of each team to ask about the athletic benefits for each team. The areas to be reviewed with each coach will be based on the areas listed in Section II, and interviews may be conducted in-person or via videoconference (e.g., Zoom, Teams). The IE will summarize information about these discussions to be reported in the Interim and Annual Report in a way that will be independent, transparent, and not sacrifice interviewee candor. Section II.B.5 describes the privacy concerns that may arise in either coach or student interviews. Coach surveys and/or interviews are designed to test the data shared by Campbell High School to better understand how the sport in question operates on a practical level. This information will be incorporated into each component of the Interim and Annual Report, as relevant.

4.     Student-Athlete Meetings, Focus Groups, and Community Feedback

The IE will visit Campbell High School in or before December 2023 for the primary purpose of interviewing coaches who wish to interview in person versus via videoconference, as described above, and, more importantly, conducting meetings and/or focus groups with interested students. These meetings and focus group opportunities will be provided, as appropriate, for both parents and students and publicized beforehand.

The IE will summarize information about these discussions to be reported in the Interim and Annual Report in a way that will be independent, transparent, and not sacrifice interviewee candor. Section II.B.5 describes the privacy concerns that may arise in such interviews. This information will be incorporated into each component of the Interim and Annual Report, as relevant.

The IE will also utilize the December 2023 visit to speak with members of the OIA, the Hawaii legislature (if requested), the DOE, or others related to the creation of new sports (such as club sports team leaders), additional funding, or other review-related issues that may arise.

5.     Facility Review

In December 2023, the IE and Plaintiffs' counsel from the ACLU of Hawai'i will conduct a site visit to the new Campbell High School athletic field and track and any associated facilities such as restrooms, concession stands, and/or locker rooms).  In May or June of 2024, the IE will return to Campbell High School to conduct a site review over two (2) days to include off-site

facilities utilized by Campbell High School athletics teams for practice and/or competition. If the IE conducts additional interviews with students, coaches, or staff he will provide his notes to counsel in accordance with sections I.3. and I.4. above.  Counsel for all Parties shall be permitted to attend this site visit as well as subsequent annual site visits.

At the May/June 2024 site visit and subsequent annual site visits, Plaintiffs shall limit the number of counsel attending to three (3) with no more than one (1) traveling from the mainland. If the circumstances warrant it, the Parties will meet and confer to discuss the attendance at the site visit by additional people.  The IE will work with both Parties to schedule this visit well in advance so that all Parties may attend, particularly regarding the facility review. Rather than having multiple photographers, the Parties shall agree to a mutually acceptable photographer to be appointed in advance so the IE can discuss the approach of the photographer and map out the site inspection. All photographs will be labeled by facility and placed in a shared repository, as well as any photographs taken by the IE[2] The Parties are welcome to take their own photographs, but all such photographs will also be incorporated into the shared repository within a reasonable time period (within five (5) business days) following the review. The Parties agree that someone local should be chosen as the official photographer so that they may return to Campbell High School (or offsite facilities used by Campbell High School athletes) if any additional photographs or photographic angles are requested.

6.   <u>Privacy Concerns</u>

Interviewing athletes, coaches, and related staff (*e.g.*, trainers, administrative personnel etc.) is a critical component of the IE reviews. The IE will provide copies of these notes to counsel upon request. Counsel will discuss and attempt to reach an agreement on whether all or any portion of the notes should be made available to the public. If an agreement cannot be reached, the dispute resolution clause contained in the Agreement shall be followed.

## II.   **Interim and Annual Compliance Report**

The IE will provide Interim Reports by the last Friday in January and Annual Reports by the last Friday in July for each year of the Compliance and Monitoring Period. The first Interim Report will be provided in January 2024.  Each Interim Report, unless otherwise specified, will provide an update as to the efforts outlined in this Plan but will not make compliance determinations and may be concise. An example of additional information included is the interest and ability survey referenced in <u>Section I</u>.B.  The January 2024 Interim Report also will provide

---

[2] The IE would only direct Campbell High School staff to take such photographs if a specific event was at issue and the photographs had a time or context-specific aspect. This should not apply to any photograph taken in any way by Campbell High School staff over the course of the academic year. For example, if Campbell High School improved signage on a facility during the year, the IE may ask a member of the staff to photograph the field before and after the new signage is to be installed to maintain a record. Otherwise, the preference will be that the mutually agreed upon photographer will take most compliance-related photographs.  Any such photographs taken by staff also will be promptly uploaded into the central repository.

information about the December 2023 site visit (described in <u>Section I.B.5</u>).

Each Annual Report will comprehensively assess Title IX compliance for the most recently concluded academic year at Campbell High School and utilize student population and athletic participation statistics for that same year, absent extenuating circumstances (like a global pandemic). This Annual Report will incorporate relevant data to demonstrate compliance and/or compliance challenges. Each Annual Report will incorporate appropriate site visits and interviews with Campbell High School staff and leadership, as well as other individual interviews requested by the IE, (*e.g.*, potentially members of the DOE and/or representatives from the OIA). Similarly, the Annual Report will, as appropriate, incorporate interviews and/or focus groups and/or survey data from students.

The IE will conduct this review and draft the Interim and Annual Report consistent with his experience at OCR. With respect to each of the components listed below in <u>Section III</u>, the IE will promptly raise any athletics gender equity concerns with Campbell High School, the DOE, and/or the OIA.  If the IE recommends gender equity changes, Campbell High School and Defendants will implement the changes promptly.  These concerns, requests and the related outcomes will be described in the Interim and Annual Reports. The IE shall also highlight any significant compliance challenges and will advise Campbell High School and Defendants of such challenges as they are learned and before the Annual Report is completed so that they can be remediated.   Campbell High School and Defendants shall follow the complaint reporting procedure set forth in <u>Section III</u> below, and any reports shall be provided to the IE on a monthly basis and summarized in the Annual Report, including the issue raised and the date it was raised, the steps taken to address the challenge, and the manner and date by which the issue was resolved.

The IE will accept feedback from the Parties on each Interim and Annual Report and will seek to incorporate such feedback as relevant and appropriate into future reports. Similarly, the IE will maintain records collected by Campbell High School and will make those available to the Parties along with the Interim and Annual Reports.

## III.    Content of the Annual Report

The IE's Annual Report will include sections addressing each relevant component of a Title IX review, as follows:

### A.     Participation

Title IX requires that athletic participation opportunities be offered in a gender-equitable manner and provides institutions with three independent and equally sufficient ways to demonstrate compliance. This is referred to colloquially as the "Three-Part Test":

- <u>Prong One</u>: Whether interscholastic-level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective full-time undergraduate enrollments; <u>or</u>,

- <u>Prong Two</u>: Where the members of one sex have been, and are underrepresented among interscholastic athletes, whether the institution has a history and continuing practice of program expansion which is demonstrably responsive to the developing interests and abilities of the underrepresented sex; <u>or</u>,

- <u>Prong Three</u>: Where the members of one sex are underrepresented among interscholastic athletes (*i.e.*, Prong One), and the institution cannot show a continuing practice of program expansion (*i.e.*, Prong Two), whether it can be demonstrated that the interests and abilities of the members of the underrepresented sex have been fully and effectively accommodated by the current athletic program.

The IE will analyze and evaluate in each Annual Report whether Prong One <u>or</u> Prong Three compliance have been met for the recently concluded year in question. That is, for each reporting year, the IE will analyze Campbell High School's full-time student population and compare it to the sex-disaggregated athletic program in that same year, (*i.e.*, if the full-time students are 48% male and 52% female, the athletic opportunities should be substantially proportionate to those measures).

As a general matter, in assessing countable sports, institutions may only rely on participation opportunities provided in athletics activities deemed to be Title IX sport teams or emerging sports offered at other secondary or post-secondary schools. Under this standard, and historic with OCR's interpretations, a cheerleading team would not count for Title IX purposes, but a gymnastics or acrobatics team may, depending on the levels of competition and competitive schedule that may exist. These will be case-by-case decisions and will be made clear in the annual reports.

In relevant part, federal guidance defines an athletic participant as one:

- who is receiving institutionally sponsored support normally provided to athletes competing at the institution involved (*e.g.*, coaching, equipment, medical and training room services) on a regular basis during a sport's season; and

- who is participating in organized practice sessions and other team meetings and activities on a regular basis during a sport's season; and

- who is listed on the squad lists maintained for each sport.

Consistent with this definition, the IE will count those student-athletes listed on a team's squad list as of the team's first date of competition and those student-athletes added during a time when a sizable amount of countable competition remains, provided the student-athletes continue to participate on a regular basis. At the same time, student-athletes who are cut or who voluntarily leave a team shortly after the first date of competition likely would not be credited, but those determinations will be made on a case-by-case basis and any methodology used to make this determination will be described in the Annual Report. The IE may make suggestions to Campbell High School to potentially limit or cap the sizes of the over-represented teams if it can

be done appropriately, but will not recommend reduction of boys' athletic opportunities as the sole way to achieve Prong One compliance without adding additional girls' opportunities.

Title IX also requires schools to provide athletic competition for its male and female athletes that "equally reflects their abilities." In this regard, the IE will review whether the competitive schedules for each gender's teams, on a program-wide basis, afford proportionately similar numbers of male and female athletes equivalently advanced competitive opportunities.

The IE does not currently know what additional sport offerings for girls at Campbell High School may be appropriate. The IE, Campbell High School, and Defendants will work together with Plaintiffs' counsel to identify appropriate sports to add for girls once interest has been assessed initially and Campbell High School will add those sports and/or levels within a reasonable time. The IE will also specifically assess the interest in girls' water polo at Campbell High School and assist Campbell High School in taking the appropriate steps to meet or build interest in the sport.

The IE will provide the annual participation analysis, including the percentage disparity between the athletic program and the full-time student population, as well as the number of female student-athletes needed to fill any participation gap. This will be the "target number" that Campbell High School should focus upon for Prong One compliance. Girls' interest in participating in sports in greater numbers also will be assessed, including the existence of any club, junior varsity, or novice team participation rates, to guide Campbell High School in the creation of teams or levels for the underrepresented gender. The IE, Campbell High School, and Defendants will work together with Plaintiffs' counsel to identify appropriate sports and/or levels to add for girls once interest has been assessed annually and Campbell High School will add those sports and/or levels within a reasonable time.

B.    Recruiting

The IE will assess the following areas in regard to recruiting: (1) whether the coaches or other professional personnel in the programs serving male and female athletes are provided with substantially equal opportunities to recruit; (2) whether the financial and other resources made available for recruitment in male and female athletic programs are equivalently adequate to meet the needs of each program; and (3) whether the differences in benefits, opportunities, and treatment afforded prospective student-athletes of each sex have a disproportionately limiting effect upon the recruitment of students of either sex.[3] The IE would like to affirmatively acknowledge that "recruiting" at a secondary school is different than the standards for recruiting at the college or university level, insofar as Campbell High School does not have the ability to recruit student-athletes from outside its district. Instead, the focus on recruiting may also involve assessments of how Campbell High School publicizes its current and any new athletic opportunities including at the feeder middle schools. *See* Section II.K, below.

---

[3] 34 C.F.R. § 106.41(c)

C.     Equipment and Supplies

Equipment and supplies include but are not limited to uniforms, other apparel, sport-specific equipment and supplies, general equipment and supplies, instructional devices, and conditioning and weight training equipment. The IE will assess compliance with this component by examining, among other factors, the equivalence for male and female athletes regarding (1) the quality of equipment and supplies; (2) the amount of equipment and supplies; (3) the suitability of equipment and supplies; (4) the maintenance and replacement of the equipment and supplies; and (5) the availability of equipment and supplies.[4] The IE quantities and quality of equipment and supplies, as provided by Campbell High School and as observed during annual site visits. The IE will also interview and/or survey coaches and athletics staff to determine if they have equipment and supplies consistent with their teams' needs.

D.     Scheduling of Games and Practice Times

The IE will assess compliance by examining, among other factors, the equivalence for male and female athletes of (1) the number of competitive events per sport; (2) the number and length of practice opportunities; (3) the time-of-day competitive events are scheduled; (4) the time-of-day practice opportunities are scheduled; and (5) the opportunities to engage in available pre-season and post-season competition.[5] To the extent that Campbell High School has "prime times" for events, *i.e.*, the opportunity to play under lights or at preferred Friday/weekend times, the IE will highlight whether this creates a gender equity issue and propose potential solutions, understanding that such challenges may involve third parties not subject to the underlying litigation.

E.     Travel and Per Diem

The IE will assess compliance regarding equitable travel and per diem practices by examining, among other factors, the equivalence for male and female athletes of: (1) modes of transportation; (2) housing furnished during travel (amount and quality), if relevant; (3) length of stay before and after competitive events; (4) per diem allowances; and (5) other dining arrangements.[6] As with recruiting, travel and per diem often looks different at the secondary versus post-secondary level. However, given Hawaii's geographic location, this may be more of a factor as student-athletes travel between islands and/or to the mainland.

F.     Coaching

The IE will assess coaching by examining, among other factors, the equivalence in availability, assignment, and compensation of coaches as follows: (1) availability of coaches and assistant coaches (including volunteers); (2) training, experience and other professional qualifications and professional standing; and (3) compensation of coaches, including rate of

---

[4] *See generally*, 34 C.F.R. § 106.41(c)(2).
[5] *See generally*, 34 C.F.R. § 106.41(c)(3).
[6] *See generally*, 34 C.F.R. § 106.41(c)(4).

compensation, duration of contracts, conditions relating to contract renewal, experience, nature of coaching duties performed, working conditions, and other terms and conditions of employment.[7]

Compliance issues will be raised where the factors outlined above deny male and female athletes coaching of equivalent quality, nature, and/or availability.

G.     Academic Support

As with the housing and dining (Section III.J), it is the IE's understanding that Campbell High School does not provide focused academic support for student-athletes. The IE will determine whether this component needs to be reviewed at Campbell High School.[8]

H.     Locker Rooms, Practice Facilities, and Competitive Facilities

The IE will assess the following factors in evaluating the provision of equitable locker rooms, practice facilities, and competitive facilities for compliance: (1) quality and availability of the facilities provided for practice and competitive interscholastic events; (2) exclusivity of use of facilities provided for practice and competitive events; (3) availability of locker rooms; (4) quality of locker rooms; (5) maintenance of practice and competitive facilities; and (6) preparation of facilities for practice and competitive events.[9] With regard to this component, and all of the components where it is relevant, the IE will use appropriate Title IX standards in comparing facilities.

I.     Medical and Training Facilities and Services

The IE will assess compliance with this component by considering the following factors: (1) availability of medical personnel and assistance; (2) health, accident, and injury insurance coverage maintained by the institution; (3) availability and quality of training facilities; (4) availability and quality of weight training and conditioning facilities; and (5) availability and qualifications of athletic trainers.[10]

As part of his assessment, the IE will assess the coverage of Campbell High Schools' athletic health care trainers ("AHCT") at its athletic events. Specifically with regard to girls' varsity water polo, the IE will review the DOE's Coverage Guidelines for Athletic Events by

---

[7] *See generally*, 34 C.F.R. § 106.41(c)(5)-(6). The coaching discussion spreads over two components, insofar as subsection (c)(5) addresses the "opportunity to receive" coaching, and subsection (c)(6) addresses the "assignment and compensation" of coaches.

[8] If certain components are not relevant or provided based on Campbell High School's athletic program, the IE may limit or eliminate such components from his review in future years after consulting with counsel for the Parties.

[9] *See generally*, 34 C.F.R. § 106.41(c)(7).

[10] *See generally*, 34 C.F.R. § 106.41(c)(8).

Athletic Health Care Trainers[11], assess Campbell High School's AHCT scheduling and coverage at girls' water polo events, and determine whether additional coverage is needed.

  J.  <u>Housing and Dining</u>

   As with the academic support (<u>Section III.G</u>), it is the IE's understanding that Campbell High School does not offer any housing or dining facilities or services to its student-athletes which is common at the secondary level. The IE will determine whether this component needs to be reviewed at Campbell High School.

  K.  <u>Publicity and Marketing</u>

   The IE will assess compliance regarding the provision of publicity and marketing by analyzing the following factors: (1) availability and quality of sports information personnel; (2) quantity and quality of publications and other promotional sources featuring the boys' and girls' programs; and (3) access to other publicity resources for boys' and girl's programs.[12] This component may be reported in tandem with the recruiting component.

  L.  <u>Support Services</u>

   The IE will assess compliance regarding this component by analyzing the following factors: (1) the amount of administrative assistance provided to boys' and girls' programs; (2) the amount of secretarial and clerical assistance provided to boys' and girls' programs; and (3) other related amenities provided to teams regarding the administration of their programs.[13]

  M.  <u>Fundraising</u>

   The IE will assess fundraising opportunities for male and female athletes to determine whether they are gender equitable.

**IV.**  **Complaint Reporting Procedure and Review**

   Campbell High School will create a reporting mechanism for student-athletes to report any gender equity concerns via a hotline and/or online portal maintained by Campbell High School. This complaint reporting mechanism also will be publicized to students, coaches, and parents in various DOE, OIA and Campbell High School-specific publications such as schedules, handbooks, and training materials.

   These reports of complaints will be shared with the IE on a monthly basis, if not more frequently. The IE will then: (1) assess the issue with the leadership of Campbell High School; (2) determine if the issue is actual or not; (3) discuss a potential remediation in the short term <u>and</u> the long term; and then (4) receive updates until the issue is resolved. The IE will summarize

---

[11] The DOE's Coverage Guidelines for Athletic Events by Athletic Health Care Trainers is incorporated as part of the DOE's Athletic Handbook.

[12] *See generally*, 34 C.F.R. § 106.41(c)(10).

[13] *See generally*, 34 C.F.R. § 106.41(c).

these issues in a separate section of the Annual Report.

Any gender equity concerns shall be shared with the IE promptly. The IE will discuss such concerns with the appropriate member(s) of Campbell High School, the DOE, and/or the OIA, and a remediation plan will be established. The timeline of this process will be recorded in the Annual Report.

Note that this section does not supplement or supplant any non-discrimination policies or processes that are properly under the purview of the Hawaii Attorney General's Office, the DOE, and/or Campbell High School. Similarly, any allegation of any form of sexual harassment or sexual misconduct learned by the IE during this review will be promptly referred to Campbell High School and not affirmatively addressed by the IE unless it significantly impacts a component of this review, as set forth in Section II. The IE will inform interviewees that, if such information is raised, the IE is a designated mandatory reporter to Campbell High School, who may appoint a staff member (*e.g.*, its Title IX Coordinator) to receive such reports.

## V.    Training and Professional Development

The IE will provide annual Title IX athletics training to Campbell High School's administration and athletics leadership, including its athletic director, assistant athletic directors, trainers, athletic department staff, and coaches. This training will also include representatives from the DOE and the OIA, as appropriate. The initial training shall be provided as soon as practicable after the Execution of the Agreement and may also provide an introduction to this review.  The training will focus on compliance standards and updates in the field of gender equity in athletics including the anti-retaliation mandates of Title IX. The IE may also incorporate compliance tools specifically developed for Campbell High School into the training. With the IE, the DOE will develop and incorporate a Title IX athletic training video into its required athletic training videos (such as the DOE Risk Management Video).  The IE will train the Campbell High School Athletic Director to provide Title IX training to parents and student athletes at meetings Campbell High School conducts with student athletes and parents at the start of each season of sport.

## VI.    Posting of Interim and Annual Reports

The Interim and Annual Reports will be posted publicly on DOE and OIA's websites (including on Campbell High School's website athletics page) within five (5) business days of completion.  Campbell High School and OIA shall announce the posting of the reports via their Instagram and X (formerly Twitter) feeds.  The IE may redact PII from the Interim and Annual Reports.  The entire Interim and Annual Report will be shared with counsel.

## VII.    Non-Retaliation Assurances

No individual should be retaliated against for cooperating with or facilitating the IE's review, responding to questions from the IE, or otherwise providing assistance or relevant materials to the IE. Likewise, there shall be no retaliation against anyone raising Title IX complaints.  All retaliation complaints shall be addressed through the Complaint Reporting

Procedure (<u>Section IV</u>) and the IE may refer retaliation complaints and investigations to Campbell High School and/or the DOE's Civil Rights Compliance Branch (CRCB) staff, as appropriate.

**EXHIBIT B**
**Additional Specific Terms, Oahu Interscholastic Association**

A.   **Review of OIA Documents.**  Within sixty (60) days of the Execution of the Settlement and Release Agreement (the "Agreement"), the Independent Evaluator ("IE") shall review the Oahu Interscholastic Association's ("OIA") governance documents (*i.e.*, Constitution, Bylaws, Handbook, and any other related documents) to assess what amendments/changes are necessary for, or will help facilitate, ongoing compliance with the requirements of Title IX, gender equity in athletics at James Campbell High School ("Campbell High School"), and the terms of the Compliance Plan (Exhibit A).  The IE shall propose any amendments/changes to the OIA Board for formal approval and the OIA Executive Director shall advocate to the OIA Board for approval of all IE recommendations.

B.   **Assessment Forms.**  The IE shall develop a Title IX assessment form that OIA-member schools shall be required to complete annually to maintain "Good Standing" as a condition of their continued membership in the OIA. This assessment form shall include information sufficient to identify possible and/or existing issues regarding gender equity in athletic participation opportunities and athletic treatment and benefits.  When the assessment forms are submitted, the IE shall review each assessment form for gender inequities and use the information to help identify OIA-wide issues and advance recommendations that are better addressed at a conference-wide, rather than school-wide, level.  The OIA shall follow the recommendations of the IE.

C.   **Policy and Training.**  The OIA and IE shall develop the policies and training materials necessary for member schools to effectively and accurately complete the assessment form submitted to the OIA.

D.   **Student-Interest Assessment and Addition of Participation Opportunities**.

  1.   The OIA shall regularly assess and take affirmative steps to develop girls' interest in and ability to participate in athletics in greater numbers.

2.     The IE shall develop a student interest survey that will be administered and distributed by the OIA to its member schools, periodically as determined by the IE.

3.     The OIA and the IE shall determine sports and additional levels of competition for which there is or may be unmet interest among girls.

4.     If there is sufficient interest and demand for additional girls' sports, the OIA shall take appropriate action to introduce and initiate a new sport and/or levels of competition to meet such interest.

5.     To encourage other schools and/or leagues within the Hawaii High School Athletic Association ("HHSAA") to sponsor additional girls' sports, the OIA and its representatives will act in good faith and exercise best efforts to advocate, propose and recommend additional girls' sports and teams to the HHSAA, including, but not limited to, at all HHSAA meetings.

6.     In the event that the HHSAA is unable to sponsor an additional girls' sport or schedule an additional team for a full league schedule, the OIA shall schedule a reasonable number of opportunities for them to compete, including scheduling additional non-league competition to make up for the lack of league contests and continue to develop the sport into a full league schedule.

E.     **Treatment and Benefits**.

1.     To the extent that the OIA provides, funds, or impacts the treatment and benefits at the member schools, the OIA shall ensure that it does so in a gender-equitable way consistent with Title IX.

2.     Scheduling of Games & Practice Times

a)     The OIA shall maintain and publish all competition schedules on the OIA website.

3.     Locker Room, Practice & Competitive Facilities

a)     All girls' athletic teams shall have access to competitive facilities that are equivalent to those provided for the boys.

b)     Where third-party ownership creates gender inequitable playoff competitive facilities, the OIA shall actively seek alternative, equivalent facilities for the girls.

c)     The OIA shall ensure playoff competition facilities are gender equitable.

4.     **Publicity & Promotional Support**

a)     The OIA will act in good faith and exercise best efforts to encourage third parties, with which it maintains a partnership or contractual agreement, to provide gender-equitable treatment in their publicity and promotion of athletic teams by meeting with third parties to discuss gender equity.

b)     To the extent that OIA contracts with third parties for publicity and/or promotion for sports for boys, it shall also expressly advocate, contract for, or otherwise provide equivalent promotion and/or publicity for girls.

c)     The OIA shall document its advocacy and efforts to ensure gender-equitable treatment in publicity and provide such documentation annually to the IE who shall include it in his reports.

d)     The OIA shall ensure its social media accounts promote student athletes at OIA member schools gender equitably.

e)     The OIA shall actively monitor publicity and promotion for gender equity.

**5. Travel & Per Diem Allowances**

a)     The OIA shall revise its Transportation Subsidy policy regarding travel to game sites for teams designated as the home team to include an equivalent subsidy for girls' water polo and girls' varsity softball.

b)     The IE shall determine if any additional sports should be included in the OIA's Transportation Subsidy policy to ensure gender equity.

F.   **Title IX Compliance.**

    1.    **OIA's Title IX Committee**: The OIA's Title IX Committee shall meet monthly with the Title IX Specialist(s) of the Hawaii State Department of Education's Civil Rights Compliance Branch ("CRCB") to discuss Title IX athletics gender equity-related concerns. Within ten (10) days of the Execution of the Agreement, the OIA shall identify the individuals assigned to the Title IX committee. The OIA shall publicize the relevant contact information for these Title IX committee members by (a) posting it prominently on any website maintained by the OIA and (b) in any OIA publications.

    2.    **Complaint Procedure.**  With the assistance of the IE, the OIA shall create and implement policies and procedures regarding complaints of unequal treatment in athletics and/or retaliation.  This procedure shall be consistent with any complaint procedure developed by the Hawai'i State Department of Education and/or CRCB. This complaint procedure shall include a process by which a complainant can make an anonymous complaint via a phone hotline and/or online portal.

        The OIA shall publicize the complaint procedure by (a) posting it prominently on any website maintained by the OIA and (b) in any OIA publications.

    **3.**    **Chairperson**.  The OIA Executive Director shall be the Chairperson of the OIA Title IX subcommittee.

G.   **Reports.**  The OIA shall provide all information required by Exhibit B to the Agreement to the IE to be included in his Interim and Annual Reports.